[No. 11938-9-I.   Division One.   February 21, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DOUGLAS
L. ADCOCK, *Appellant.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

SCHOLFIELD, J.—Douglas L. Adcock appeals a juvenile court disposition finding him to be a middle offender and ordering him committed to the Division of Juvenile Rehabilitation for a period of 21 to 28 weeks, alleging the court erred in failing to determine the standard range of disposition for his offense, and in considering his "criminal history." We affirm.

Adcock pleaded guilty to a charge of second degree burglary on May 27, 1982. His Statement on Plea of Guilty reflected that he knew his criminal history was subject to the court's later determination. On July 12, 1978, Adcock had been convicted of third degree theft. On November 6, 1981, he had been convicted of two counts of second degree burglary and one count of reckless endangerment. Adcock's counsel informed the judge before he accepted Adcock's guilty plea that she had explained the possible maximum and minimum sentences for the charge, and that his disposition would depend upon the court's interpretation of his criminal history. The judge accepted Adcock's plea, then continued the hearing to give the parties an opportunity to brief the legal question of whether the November 1981 incidents should be counted as three separate convictions in

computing the standard disposition range, or whether only the highest of the three charges would count, pursuant to RCW 13.40.020(6)(a).[1]

At the disposition hearing, Adcock argued that his three November 1981 convictions were committed during one "course of conduct" because they occurred during a period when he "had run away from home".[2] Adcock's interpretation would have limited the judge's sentencing discretion to a lower level within the standard range. The State argued the November 1981 offenses were three separate convictions for the purpose of calculating Adcock's criminal history. The State's interpretation allowed the judge to impose an increased sentence within the standard range. The judge ruled that each of the November 1981 convictions would count as an offense in computing Adcock's criminal history because the offenses did not occur in the same course of conduct.

■ Adcock first contends the trial judge erred in failing to determine the standard disposition for his offense before entering the order of disposition. Although the standard range finding in the order was left blank, the report of proceedings reveals that Adcock's counsel informed the court she had thoroughly explained the criminal history, the arguments made, what his maximum and minimum possible sentences were, and that he understood the standard range and the concept of manifest injustice. Counsel stated, "Douglas and I have been through this two times before, I

---

[1]RCW 13.40.020(6) states:

"'Criminal history' includes all criminal complaints against the respondent for which, prior to the commission of a current offense:

"(a) The allegations were found correct by a court. If a respondent is convicted of two or more charges arising out of the same course of conduct, only the highest charge from among these shall count as an offense for the purposes of this chapter . . ."

[2]Counsel argued, "Douglas had run away from home, and was living out on his own with several other kids; they had formed a little band of kids that were burglarizing houses, and committing all of these other acts over a period of two or three days".

am going through the same plea form, therefore I am very sure in my opinion that he totally understands everything that is contained on it." Adcock acknowledged understanding the standard ranges and criminal history. The technical error of failure to mark the juvenile court form does not require reversal.

Adcock next contends RCW 13.40.020(6) does not apply to the determination of the standard range of disposition. We do not agree.

In construing the Juvenile Justice Act of 1977, a court looks exclusively to the statute as authority for the adjudication and disposition of juvenile offenders, except where otherwise expressly provided. RCW 13.04.450. The Supreme Court has recognized a dichotomy of purpose in the juvenile justice act. It incorporates principles of both rehabilitation and punishment. In resolving any issue which turns on the legislative purpose of the act, the court seeks to ensure that its decision effectuates both these purposes. *See State v. Lawley,* 91 Wn.2d 654, 591 P.2d 772 (1979).

Our Supreme Court recently reviewed the provisions of the juvenile justice act which deal with the disposition of juvenile offenders. *State v. Rice,* 98 Wn.2d 384, 655 P.2d 1145 (1982). The court stated:

> For the purposes of disposition, the court may consider a wide variety of matters including aggravating and mitigating factors. In most cases the court is required to order a disposition within the standard range for the offense. RCW 13.40.160. The disposition standards are established by the juvenile disposition standards committee pursuant to RCW 13.40.030. The standards establish ranges which may include either confinement or community supervision, or both, on the basis of a youth's age, the instant offense, and the history and seriousness of previous offenses. The statute provides both upper and lower limits on the standard range. . . .
>
> The court must in each case order a disposition within the limits established by the category of offender unless to do so would effectuate a "manifest injustice." RCW 13.40.160.

*State v. Rice,* 98 Wn.2d at 394–95.

With the purposes of the disposition in mind, we review RCW 13.40.150(3). That statute states:

Before entering a dispositional order as to a respondent found to have committed an offense, the court shall hold a disposition hearing, at which the court shall: . . .

(g) Determine whether the respondent is a serious offender, a middle offender, or a minor or first offender;
. . .
(i) Consider whether or not any of the following aggravating factors exist: . . .
(iv) The respondent has a recent criminal history or has failed to comply with conditions of a recent dispositional order or diversion agreement; . . .
(vi) There are other complaints which have resulted in diversion or a finding or plea of guilty but which are not included as criminal history.

■ The statute indicates the "criminal history" to be used in determining the standard range of disposition for a juvenile offense is strictly limited to the convictions which fall within the definition in JuCR 7.12(c)[3] as limited by RCW 13.40.020(6)(a). *See In re Luft,* 21 Wn. App. 841, 589 P.2d 314 (1979). *See also* L. Foley, J. Kuntz & L. McKeeman, *Juvenile Justice Manual* §§ 13.40.020, at 5, 13.40.150, at 4–5 (2d ed. 1981). This definition of criminal history applies to all sections of the juvenile justice act.

Adcock next contends the judge erred in finding that the three offenses he committed on November 6, 1981 did not arise out of the same course of conduct.

Adcock supports his argument through analogy to the court's interpretation of the habitual offender statute.[4] The

---

[3]JuCR 7.12(c), as pertinent here, states:

"**Criminal History.** In determining the standard range of disposition for a juvenile, the following shall constitute the juvenile's criminal history pursuant to RCW 13.40.020(6): . . .

"(2) A conviction by a juvenile court or a plea of guilty made on or after July 1, 1978."

[4]RCW 9.92.090 provides:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been convicted, whether in this state or elsewhere, of any crime which under

habitual offender statute is silent as to how convictions obtained on the same day are to be treated, but the Supreme Court has held that where a defendant has two convictions in the same day, this constitutes only one felony for the purposes of that statute. *State v. Rinier*, 93 Wn.2d 309, 314–15, 609 P.2d 1358 (1980). The courts have construed the statute as not applying to contemporaneous offenses and have held that additional punishment should not be imposed unless a defendant has had sufficient time between the previous convictions and the offense for which enhanced punishment is sought to permit an opportunity for reformation. *See State v. Braithwaite*, 92 Wn.2d 624, 600 P.2d 1260 (1979). *See also State v. Jones*, 138 Wash. 110, 244 P. 395 (1926); *State v. Miller*, 22 Wn. App. 960, 593 P.2d 177 (1979). Adcock contends this analysis also logically applies to RCW 13.40. We do not agree.

■■ The statutes have different purposes and accomplish different results. RCW 9.92.090 authorizes the court to adjudicate an adult defendant's status as a habitual criminal for the purpose of overriding the statutory maximum prison term. The result of the adjudication is to authorize a defendant's incarceration for life for repeated offenses after opportunities to reform have not resulted in rehabilitation. The criminal history determination results

---

the laws of this state would amount to a felony, or who shall previously have been twice convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years.

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

in no such severe sanctions. Our Supreme Court has described the standard disposition ranges in the juvenile justice act as similar to those established by the Board of Prison Terms and Paroles pursuant to RCW 9.95 for the purpose of setting minimum prison terms. *State v. Rhodes,* 92 Wn.2d 755, 758, 600 P.2d 1264 (1979). The court's determination of a juvenile offender's sentence is restricted and must be within a standard range absent a finding of manifest injustice. *See* RCW 13.40.160(1). RCW 13.40-.020(6) recognizes that a juvenile might receive multiple convictions for his actions committed in the same course of conduct and that it would be unfair to find the juvenile had a long criminal history when the convictions arose from one criminal event.

Adcock, pointing out that the November 1981 charges were joined pursuant to CrR 4.3,[5] contends the joinder rule constitutes a more precise statement of what is meant by the term "course of conduct." We do not agree.

The permissive joinder rule of CrR 4.3(a) allows matters to be tried together even if not part of a single scheme or plan. CrR 4.3(a)(1). The State may elect, but is not required, to join charges "of the same or similar character", CrR 4.3(a)(1), and must join offenses only when based on the same conduct. CrR 4.3(c); *State v. Mitchell,* 30 Wn. App. 49, 55, 631 P.2d 1043 (1981).

No Washington appellate court has addressed this question. The Supreme Court was presented with similar contentions in *In re Schellong,* 94 Wn.2d 314, 315–16, 616 P.2d 1233 (1980) and *In re Trambitas,* 96 Wn.2d 329, 334, 635 P.2d 122 (1981), where the juvenile offenders argued their

---

[5]CrR 4.3 states in pertinent part:

"Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses, whether felonies or misdemeanors or both:

. . .

"(2) Are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan . . ."

sentences had been improperly enhanced because neither had an opportunity to reform his behavior before disposition on subsequent offenses. The court, however, ruled the purely statutory argument could not be raised through a personal restraint petition.

With RCW 13.04.450 and the purposes of the statute in mind, we consider the phrase "course of conduct" as used as a term of art in the juvenile justice act. No definition is given for the phrase.

> Where the legislature has not defined words used in the act, the court must then determine as best it can the meaning of the language in accordance with the legislative intent and common understanding so as to prevent absurdities and to advance justice.

(Footnote omitted.) 1A C. Sands, *Statutory Construction* § 20.08 (4th ed. 1972).

"Course of" is defined in *Webster's Third New International Dictionary* (1969) as: "4: an ordered continuing process, succession, sequence, or series". Adcock's November 1981 offenses were not shown to have been committed as part of any ordered or continuing sequence or under any recognizable scheme or plan. The three offenses were instead shown to have been committed at different locations and at different times during the day, indicating a random series of events.

A criminal event which is intimately related or connected to another criminal event is held to arise out of the same criminal conduct. *State v. Erickson*, 22 Wn. App. 38, 44, 587 P.2d 613 (1978) (charge of unlawfully possessing a pistol found in defendant's possession at time of arrest was intimately connected to a charge of second degree burglary). Adcock claims no intimate connection or relationship between the three offenses, except for the fact that they occurred during the same 2–day period. The record does not support his allegation that the offenses arose out of the same "course of conduct." *See State v. Mitchell, supra.* All three convictions were properly considered as part of his criminal history.

The order is affirmed.

SWANSON and RINGOLD, JJ., concur.

Reconsideration denied April 5, 1984.

Review denied by Supreme Court May 25, 1984.