[Nos. 8843-6-II; 8414-7-II.   Division Two.   December 23, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. DARRIN MICHAEL CALLOWAY, *Appellant.*

*Bruce D. Hovey,* for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

REED, J.—Darrin Calloway, a juvenile, appeals his juvenile court orders of commitment. We affirm.

On November 28, 1984, Calloway was convicted in Pierce County Juvenile Court on his plea of guilty to one count of taking a motor vehicle without the owner's permission. On May 22, 1985, he again was convicted on his plea of guilty to attempted burglary in the second degree and to possessing stolen property in the third degree, both committed while he was on release from detention pending appeal of his sentence for the earlier conviction. He has appealed both sentences on the same ground, and the two appeals have been consolidated.

Calloway argues that the court erred in ordering commitments of 13 to 16 weeks and 21 to 28 weeks because, in determining his sentence, the court included in his criminal history two prior burglaries, committed within a period of 1 hour. Calloway asserts that, under RCW 13.40.020(6)(a),[1] only one of the two burglaries should have been included in his criminal history for the purpose of calculating the standard range of disposition, because the two burglaries arose out of the "same course of conduct."

According to defendant, the burglaries arose out of the same course of conduct because they were committed, within the span of an hour, for the single purpose of obtaining money to buy drugs. In his statement to the police following his arrest for those two burglaries, Calloway stated: "As we were walking back to my house, that's when we schemed upon the idea to hit a couple of houses." Calloway and his cousin went to Calloway's home. Upon noticing that his neighbor was gone, Calloway and his cousin burglarized the neighbor's house. The two returned to Calloway's home for a short time and then decided to take a bus to the cousin's home. As they were walking to the bus stop, they noticed an apparently empty house. They then committed the second burglary.

At each of the disposition hearings, the court commissioners rejected Calloway's argument that these burglaries arose out of the same course of conduct. In each case, the court imposed a standard range of disposition based partly on a criminal history that included both burglaries, among other offenses.

Under the guidelines established by the Juvenile Justice Act of 1977, RCW 13.40, the standard range of disposition for a juvenile offender is to be based on the offender's age,

---

[1] "(6) 'Criminal history' includes all criminal complaints against the respondent for which, prior to the commission of a current offense:

"(a) The allegations were found correct by a court. If a respondent is convicted of two or more charges arising out of the same course of conduct, only the highest charge from among these shall count as an offense for the purposes of this chapter . . ."

the instant offense, and the offender's criminal history. RCW 13.40.030. In determining a juvenile offender's criminal history, only the highest charge among two or more offenses counts as an offense if the offenses arose "out of the same course of conduct." The issue on appeal is whether that phrase encompasses the two burglaries in question.

The juvenile justice act does not define "same course of conduct." In the only decision to have considered its meaning, *State v. Adcock*, 36 Wn. App. 699, 676 P.2d 1040 (1984), the phrase was viewed as a term of art; because the phrase was not defined in the act, and in order to determine its common meaning, the court resorted to *Webster's Third New International Dictionary* (1969). Utilizing that dictionary's definition of "course of," the court found that the defendant's offenses had not been "committed as part of any ordered or continuing sequence or under any recognizable scheme or plan." *Adcock*, 36 Wn. App. at 706. The *Adcock* court also referred to this court's consideration of similar phraseology in the joinder rules when, citing *State v. Erickson*, 22 Wn. App. 38, 587 P.2d 613 (1978), we stated that "[a] criminal event which is intimately related or connected to another criminal event is held to arise out of the same criminal conduct." *Adcock*, 36 Wn. App. at 706.

Although we believe that Calloway's offenses do not fall within the meaning attributed by the *Adcock* court to "same course of conduct," we also believe there is a need for further refinement of that phrase. The phrase implies, in the context of the statute, some physical or causal connection between offenses that, in many cases, may be more circumscribed than the connection between offenses committed as part of a "recognizable scheme or plan." We find that connection to be appropriately described in the Model Sentencing and Corrections Act. In both § 3–105, pertaining to enhanced sentencing for persistent offenders, and § 3–107, containing guidelines for imposing concurrent or consecutive sentences, two or more offenses are considered to have been committed as part of a "single course of con-

duct" if during that conduct "there was no substantial change in the nature of the criminal objective."[2] Model Sentencing and Corrections Act §§ 3–105, 3–107 (1979) (National Conference of Commissioners on Uniform State Laws).

Calloway's two burglaries, committed within the period of an hour and allegedly for the common purpose of obtaining sufficient funds with which to buy drugs, did not arise from the same course of conduct. The criminal objectives of each crime, though identical, that is burglary of a house, were distinct and were separately realized upon the completion of each crime. The single subjective purpose of obtaining funds to buy drugs does not operate to convert the two courses of conduct into one. The test for the "same course of conduct" is an objective one that is not dependent upon the offender's subjective intent, beyond the mental state required for commission of the offense. The facts indicate that the burglaries were random crimes, committed as the opportunities arose. They were committed during separate courses of conduct. Both offenses were properly considered as part of Calloway's criminal history.

---

[2]The comment to § 3–107 contains examples of criminal offenses which, under § 3–107, support imposing either concurrent or consecutive sentences depending upon whether or not those offenses were committed as a part of a single course of conduct. The comment states:

Multiple sentences arise in at least three separate contexts. First, an offender may, in the process of seeking one criminal objective, actually commit several technical offenses. The burglar may be guilty of burglary, possession of burglary tools, possession of stolen property, flight to avoid arrest, and conspiracy to commit burglary. Second, an offender may engage in a *pattern* of behavior constituting a series of separate offenses, such as passing a number of bad checks or embezzling small amounts of money over an extended period of time. Third, an offender can commit multiple offenses in separate, unrelated episodes.

(Italics ours.) The comment goes on to state that the first example is appropriate for concurrent sentencing. This first example would also, under RCW 13.40-.020(6)(a), constitute the "same course of conduct." These examples help to illustrate why we believe the act's phraseology appropriately may be used to define "same course of conduct" as used in the juvenile justice act.

425

We affirm the juvenile court's orders of commitment.

WORSWICK, C.J., and PETRICH, J., concur.