[No. 16094-0-I.   Division One.   September 8, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. MONA LISA HUFF, *Appellant.*

*John R. Christiansen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney, Jennifer Eychaner, Senior Deputy,* and *Anne Bremner, Deputy,* for respondent.

SCHOLFIELD, C.J.—Mona Lisa Huff appeals from the trial court's order of disposition, arguing that only one of two prior convictions should have been included in her criminal history for the purpose of calculating the standard range of disposition since both crimes arose out of the "same course of conduct." We affirm.

## FACTS

Huff, 17 years old at the time of trial, was convicted for the second degree burglary of a medical–dental building on December 11, 1984. At the disposition hearing, she argued that the standard range had been miscalculated since two of her prior convictions arose from the "same course of conduct" and, therefore, should have counted as only one offense in her criminal history.

The prior convictions at issue arose out of an incident on May 28, 1984, which occurred at the home of Penny Anderson, Huff's former teacher. The Andersons were away for the weekend, and a neighbor, Bernice Smith, noticed Huff sitting on the curb in front of the Anderson house around 10 a.m. After about 1 hour, Smith saw Huff move to the front porch of the house and begin to light matches. Smith approached Huff, explained the Andersons were away, and asked if she would like to come back later. Huff replied that she would not.

Smith then realized that Huff was probably the same girl who had attempted to break into the Andersons' home once before and had succeeded in doing so one other time, causing some damage inside. She telephoned the police, who arrived at 11:50 a.m. to find Huff at the rear of the house in the process of kicking open a window under the back porch. Scorch marks were found on the front porch, where she had been lighting matches earlier. Huff told police that she did not like the Andersons and was mad at them. She was convicted of reckless burning in the second degree and attempted burglary in the second degree.

The trial court ruled that these two offenses did not arise from the same course of conduct, but were two distinct offenses, and consequently the standard range of disposition was found to be 30 to 40 weeks rather than 21 to 28 weeks.

## Course of Conduct

Huff contends that the trial court misconstrued the course of conduct rule and that the two crimes, committed during a single visit to the same residence, both motivated by resentment and aimed at damaging the Andersons' home, constituted one course of conduct. We disagree.

The standard range of disposition for a juvenile offender is based upon the age of the juvenile, the nature of the instant offense, and the history and seriousness of previous criminal offenses. RCW 13.40.030(1)(a). "Criminal history" includes all criminal complaints against the juvenile occur-

ring prior to the current offense. However, if the juvenile was convicted of two or more offenses arising out of the "same course of conduct," only the highest charge will be counted as an offense.[1]

The meaning of the phrase "same course of conduct" as used in the statute was first addressed by this court in *State v. Adcock*, 36 Wn. App. 699, 676 P.2d 1040 (1984). Adcock maintained that three prior offenses were committed during one course of conduct because they occurred during the period when he had run away from home.

We noted that "[a] criminal event which is intimately related or connected to another criminal event is held to arise out of the same criminal conduct." *Adcock*, at 706. However, Adcock's prior offenses were not shown to have been committed "as part of any ordered or continuing sequence or under any recognizable scheme or plan." *Adcock*, at 706. Rather, the evidence indicated a random series of events, with the three offenses committed at different locations and at different times during the day. *Adcock*, at 706.

The juvenile offender in *State v. Calloway*, 42 Wn. App. 420, 711 P.2d 382 (1985) argued that only one of two prior burglaries should have been included in his criminal history because they were committed within a 1–hour period and for the same purpose—to obtain money for narcotics. The *Calloway* court refined the *Adcock* definition, stating that the phrase "same course of conduct" implies "some physical or causal connection between offenses that, in many cases, may be more circumscribed than the connection between offenses committed as part of a 'recognizable scheme or plan.'" *Calloway*, at 423 (quoting *Adcock*, at 706). Offenses will have the connection necessary to constitute a single course of conduct, the court found, "if during that conduct

---

[1]RCW 13.40.020(6)(a) states in pertinent part: "If a respondent is convicted of two or more charges arising out of the same course of conduct, only the highest charge from among these shall count as an offense for the purposes of this chapter . . ."

'there was no substantial change in the nature of the criminal objective.'" (Footnote omitted.) *Calloway,* at 424 (quoting the Model Sentencing and Corrections Act §§ 3–105, 3–107 (1979) (National Conference of Commissioners on Uniform State Laws)).

The court then went on to hold that the test for "same course of conduct" is an objective one that does not depend upon the offender's subjective intent. *Calloway,* at 424. Therefore, although the criminal objective of both offenses in that case was identical—burglary of a house—the crimes were distinct and separately realized upon their completion. *Calloway,* at 424. The single subjective purpose of obtaining money for narcotics, the court reasoned, did "not operate to convert the two courses of conduct into one." *Calloway,* at 424.

The court adopted the following example from the comment to section 3–107 of the Model Sentencing and Corrections Act to illustrate multiple offenses that would constitute one course of conduct:

> [A]n offender may, in the process of seeking one criminal objective, actually commit several technical offenses. The burglar may be guilty of burglary, possession of burglary tools, possession of stolen property, flight to avoid arrest, and conspiracy to commit burglary.

*Calloway,* at 424 n.2.

■ Likewise, the crimes at issue here lack the connection necessary to constitute one course of conduct. Unlike the example adopted by *Calloway,* there was no objectively discernible relationship between the two offenses. The reckless burning in no way facilitated the attempted burglary and vice versa. Rather, Huff had two separate and distinct criminal objectives—to burn the house and to burglarize the house.

Huff's single subjective purpose, to harass and vex the Andersons, "does not operate to convert the two courses of conduct into one." *Calloway,* at 424. Huff had attempted once before and succeeded one other time in burglarizing

the Andersons' home. No one would argue that these two offenses should be included as part of the same course of conduct with the two crimes at issue here. Yet, the analysis urged upon us by the appellant, taken to its logical extreme, would compel that conclusion since all four crimes were motivated by the same subjective desire to harm the Andersons.

The fact that the reckless burning and the attempted burglary were committed at the same residence, within a relatively brief time span and directed at the same victims, does not alter our conclusion. These circumstances lend credibility to Huff's contention that she acted with a single subjective intent, but do not show the single criminal objective necessary to convert two otherwise separate criminal acts into the "same course of conduct" within the meaning of RCW 13.40.020(6)(a).

In conclusion, the trial court correctly included both the reckless burning and the attempted burglary in its calculation of the standard range of disposition. The court's order is affirmed.

COLEMAN and GROSSE, JJ., concur.