[No. 8672-1-III. Division Three. November 3, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. HENRY BAPTIST
GARNIER, *Appellant.*

---

*Paul Wasson,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *Sam Cozza, Deputy,* for respondent.

STAUFFACHER, J.*—Henry Garnier appeals his conviction of 13 counts of second degree burglary and 3 counts of attempted second degree burglary. We affirm.

On February 1, 1987, police responded to an alarm at the Paulsen Building in Spokane. They observed Mr. Garnier climbing down a fire escape and subsequently arrested him. Approximately $236 in cash and coins was discovered in his coat pockets. There was blood on his pants and some of the money. Investigation revealed 18 suites in the building had been burglarized and cash removed. Entry was consistently gained by breaking out a door window with a fire extinguisher in order to unlock the door.

Mr. Garnier was initially charged in district court with four counts of second degree burglary. His preliminary appearance was held February 2, 1987. Subsequently, an information was filed in superior court. On March 10, 1987, that information was amended to charge Mr. Garnier with additional counts of second degree burglary and attempted second degree burglary.

Also, on March 10, 1987, Mr. Garnier waived his right to a speedy trial for an unspecified time but consented to a trial date of April 20, 1987. On April 14, 1987, the trial date was continued to May 11, 1987. Mr. Garnier did not consent to this continuance and made a motion to dismiss for violation of his speedy trial right. He was convicted by a jury and received an exceptional sentence of 108 months, the standard range being 43 to 57 months and the maximum 10 years.

The first issue is whether Mr. Garnier's right to a speedy trial was violated. "A defendant not released from jail pending trial shall be brought to trial not later than 60 days after the date of arraignment, less time elapsed in district court." CrR 3.3(c)(2)(i). While a defendant is detained in jail, time elapsed in district court begins with the day the complaint is filed. CrR 3.3(c)(2)(ii). A criminal

---

*Judge Walter A. Stauffacher is serving as a Judge Pro Tempore of the Court of Appeals pursuant to RCW 2.06.150.

charge not brought within the time period provided by CrR 3.3 shall be dismissed with prejudice. CrR 3.3(i). If the duration of the waiver is not specified, the waiver is effective only until the date of the trial contemporaneously or subsequently set by the court. *State v. Burroughs,* 23 Wn. App. 190, 192, 596 P.2d 1340, *review denied,* 92 Wn.2d 1033 (1979); *State v. Pomeroy,* 18 Wn. App. 837, 842, 573 P.2d 805 (1977).

Under CrR 3.3(c)(2)(i), Mr. Garnier's 60 days started February 2, 1987, the date of his preliminary appearance in district court. By March 10, 1987, the date of the written waiver, 36 days had elapsed. He then waived his right to speedy trial to April 20, 1987. Thus, the period from March 10 through April 20, 1987, is excluded. CrR 3.3(g)(3). The 21 days between April 21, 1987, and May 11, 1987, added to the 36 days expended prior to the waiver, yield a total of 57 days. We hold Mr. Garnier was afforded his CrR 3.3 speedy trial right as he was tried within 60 days, excluding the period of the waiver.

The second issue is whether all 16 convictions should have been considered the "same criminal conduct" under RCW 9.94A.400[1] in determining the offender score for sentencing. *State v. Dunaway,* 109 Wn.2d 207, 215, 743 P.2d 1237, 749 P.2d 160 (1987) construed the words "same criminal conduct" using the objective intent analysis from *State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986):

[D]eciding if crimes encompassed the same criminal conduct, trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

However, *Dunaway* specifically overruled that portion of *Edwards* which held crimes involving two victims could constitute the same criminal conduct. *Dunaway,* at 215,

---

[1]Amended by Laws of 1987, ch. 456, § 5.

concluded crimes involving multiple victims must be treated separately: "To hold otherwise would ignore two of the purposes expressed in the SRA [sentencing reform act]: ensuring that punishment is proportionate to the seriousness of the offense, and protecting the public." Additionally, *Dunaway* noted treating such crimes separately would lengthen the term of incarceration and better protect the public by deterring commission of multiple crimes.

■ Mr. Garnier contends he should not be sentenced under *Dunaway* because its ruling is based upon the 1987 amendment to RCW 9.94A.400(1)(a), and the *Dunaway* decision had not been filed at the time he was sentenced. However, there were cases prior to *Dunaway* which held a series of burglaries with the single subjective intent of obtaining money did not operate to convert the multiple crimes into one. *State v. King,* 47 Wn. App. 38, 40, 733 P.2d 568 (1987) (citing D. Boerner, *Sentencing in Washington* § 5.8(a) (1985)); *State v. Gonzales,* 46 Wn. App. 388, 408, 731 P.2d 1101 (1986); *State v. Huff,* 45 Wn. App. 474, 478, 726 P.2d 41 (1986); *State v. Calloway,* 42 Wn. App. 420, 424, 711 P.2d 382 (1985). Therefore, even under the *Edwards* rationale, these separate burglaries do not constitute the same criminal conduct. Each burglary was a complete and final act; each was not dependent on nor interrelated to the other.

The next issue before us is whether imposition of an exceptional sentence was erroneous. To reverse an exceptional sentence the reviewing court must find: (1) the reasons supplied by the sentencing judge are not supported by the record; (2) those reasons do not justify a sentence outside the standard range for that offense; and (3) the sentence imposed was clearly excessive or clearly too lenient. RCW 9.94A.210; *State v. Armstrong,* 106 Wn.2d 547, 549, 723 P.2d 1111 (1986).

Mr. Garnier argues the reasons given for the court's imposition of an exceptional sentence are insufficient (not

that they are unsupported by the record) and that the sentence was clearly excessive. Therefore, factors two and three above are the focus of appellate review.

The court listed three aggravating circumstances to justify the exceptional sentence:

A. Statutory Aggravating Factors:

1. Multiple Victims. The charge counts involve sixteen separate secured offices within the Paulsen Professional Building in Spokane, Washington. The counts involve fifteen separate victim businesses.

2. High Degree of Sophistication. The break–ins were carried out on the one time during the week when they would be least likely to be discovered (ie a Sunday evening) and involved a type of burglary which is relatively uncommon, that is, a "second story operation".

B. Non–Statutory Aggravating Factor:

1. Unusually High Offenders Score: It is noted that the current SRA scoring system for level II offenses only extends up to nine points. This would yield a standard range of 43 to 57 months. The defendant has a score of "29" for the Second Degree Burglary counts and a score of "30" for the Attempted Second Degree Burglary counts, which is far in excess of any offender score that could have been anticipated by the drafters of the SRA scoring system. An exceptional sentence is necessary in order to observe the degree of proportionality of punishment which is part of the purposes behind the SRA. RCW 9.94A.010(1). Otherwise, a person who cimmits [sic] over a dozen burglaries would be punished the same as one who only commits 4 or 5.

An appellate court reviews a trial court's reasons supporting a sentence outside the standard range by independently determining, as a matter of law, whether the reasons are substantial and compelling and justify the imposition of an exceptional sentence. *State v. Nordby,* 106 Wn.2d 514, 518, 723 P.2d 1117 (1986). In considering the "multiple victims" factor, we have already determined that the multiple burglaries committed by Mr. Garnier should each be counted in arriving at the offender score for sentencing. Therefore, it should not be used as an aggravating factor to justify an

exceptional sentence. Also, neither the timing (Sunday) nor a "second story operation" constitute such an unusual time or method of burglary as to indicate a "high degree of sophistication" under RCW 9.94A.390(2)(c)(iii). However, we consider the third factor sufficient in itself to impose an exceptional sentence.

RCW 9.94A.310 applies to offender scores ranging from 0 to "9 or more". Mr. Garnier, who had an offender score of 29 on counts 1–11, 13, and 14, and 30 on counts 12, 15 and 16, argues because the statute specifically refers to scores greater than 9, it has already taken into account those career criminals who may have a score higher than 9 in establishing the standard range.

The State argues that an offender score so grossly disproportionate as that of Mr. Garnier could not have been contemplated by the Legislature in enacting RCW 9.94A-.310. Reference to the statutorily expressed purpose of the Sentencing Reform Act of 1981 (SRA) supports the State's position:

The purpose of this chapter is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences, and to add a new chapter to Title 9 RCW designed to:

(1) Ensure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history;

(2) Promote respect for the law by providing punishment which is just;

(3) Be commensurate with the punishment imposed on others committing similar offenses;

(4) Protect the public;

(5) Offer the offender an opportunity to improve him or herself; and

(6) Make frugal use of the state's resources.

RCW 9.94A.010.

■ If a burglar with an offender score of 29 received the same punishment as a burglar with an offender score of 9,

the punishment would not be proportionate to the seriousness of the offense, promote respect for the law, or be commensurate with the punishment imposed on others committing similar offenses. Punishment is the paramount purpose of the SRA. *State v. Rice*, 98 Wn.2d 384, 393, 655 P.2d 1145 (1982). D. Boerner, *Sentencing in Washington* § 2.5(a), at 2–32 (1985) states:

> The use of proportionality as a requiring principle is based on the Kantian imperative that it is unjust not to impose punishment that is deserved. This concept, generally expressed as a requirement that the punishment imposed not depreciate the seriousness of the crime, has long been accepted. It operates to create a lower limit below which punishment would be disproportionate. This use of the concept as a requirement combines with the limiting use of the concept to create a range of permissible punishments. As seen by Norval Morris, proportionality "properly limits the maximum and the minimum of the sentence that may be imposed, but does not give us any more fine tuning to the appropriate sentence than that."

(Footnote omitted.) Restricting Mr. Garnier's conduct to the grid would encourage multiple burglaries; the public would no longer be protected. We conclude Mr. Garnier's offender score of 29, well above the maximum offender score contemplated by the wording "9 or more", is a substantial and compelling justification for an exceptional sentence.

█ Finally, was the sentence imposed clearly excessive? An exceptional sentence can only be overturned as clearly excessive if the reviewing court finds that the sentencing court abused its discretion. *State v. Dunaway, supra; State v. Nordby, supra; State v. Oxborrow*, 106 Wn.2d 525, 723 P.2d 1123 (1986). A 108–month sentence is less than double the longest sentence under the standard range (57 months) and less than the statutory maximum of 10 years for second degree burglary. RCW 9A.20.021(1)(b); RCW 9A.52.030(2). We hold the sentence was not clearly excessive.

665

Mr. Garnier's convictions are affirmed.

THOMPSON, C.J., and MUNSON, J., concur.

Review denied by Supreme Court February 28, 1989.