[No. 54915-0. En Banc. April 27, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ERIC L.
COLLICOTT, *Petitioner.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for petitioner.

*Seth R. Dawson, Prosecuting Attorney,* and *Larry E. McKeeman, Chief Criminal Deputy,* for respondent.

UTTER, J.—Petitioner Eric L. Collicott seeks review of a Court of Appeals decision finding that his conviction for first degree burglary, first degree rape, and first degree kidnapping do not constitute the "same criminal conduct" for the purpose of determining his offender score under RCW 9.94A.360. The trial judge found that the offenses did constitute the same criminal conduct. We find the trial court's reasoning persuasive and reverse the decision of the Court of Appeals.

On December 12, 1985, petitioner pleaded guilty to first degree burglary under RCW 9A.52.020, first degree rape under RCW 9A.44.040, and first degree kidnapping under RCW 9A.40.020. As part of the plea, Mr. Collicott stipulated to the admissibility of the victim's statement, as well

as her interview with a police detective, as material facts for the court to consider in sentencing. These documents provide us with a glimpse at the underlying facts of the case.

Eric Collicott broke into the Yokefellow Counseling Center (the Center) in Lynnwood in the early morning hours of September 28, 1985. Mr. Collicott apparently began collecting electronic equipment inside the building. Sometime during this activity, he made a loud crashing noise.

This noise awoke the victim, sleeping in one of the Center's bedrooms. She had arrived earlier that night and had arranged with the Center's staff to spend the night there in preparation for doing work the next day. Half awake, she walked out into the hallway to investigate and saw Mr. Collicott standing in front of an opened closet. She asked him who he was and what he was doing. Mr. Collicott appeared to be extremely intoxicated and gave an incoherent answer, so the victim led him to a nearby couch and sat him down. She thought he might have been one of the Center's residents.

The victim went to the front of the building to see if the door was open. She saw there a pile of electronic equipment, noticed that the front office had been burglarized, and tried to use the office phone to call the police. The phone did not work. The victim went back to the living room to a phone she knew was operative.

As she entered the living room, Mr. Collicott came from behind and hit her over the head with a table lamp. He showed her that he had a knife, which the victim later said looked as though it was taken from a kitchen. He grabbed her hair, led her into the bedroom, and ordered her to give him money and the keys to her car. He tied her hands and feet and gagged and blindfolded her. Mr. Collicott then went out of the room and loaded up the electronic gear into the victim's car.

Mr. Collicott returned to the bedroom and raped the victim. He then took her to the car, got into the driver's seat

with the knife on the floor near him, and drove off. He told her that he was going to drive somewhere to get a gun. After arriving at this destination, Mr. Collicott left the victim in the car while he went inside. He took the keys with him. The victim remembered that she kept an extra car key in a magnetized container under the car. She worked her hands loose, got out and found the key, got in the driver's seat, and drove away as quickly as possible. She eventually was able to contact the police.

After Mr. Collicott's eventual arrest, the Snohomish County Prosecutor charged him with first degree burglary (count 1), first degree rape (count 2), and first degree kidnapping (count 3), all committed with a deadly weapon. Mr. Collicott pleaded guilty to all charges. In his plea, he made the following statement:

> Counts I, II and III all occurred in Snohomish County during the early morning hours of 9–28–85. During commission of each of the crimes in Counts I, II, and III, I was armed with a kitchen knife which qualifies as a deadly weapon under 9.94A.125.
>
> Count I: I unlawfully entered a dwelling—Yokefellow Center—with the intent to commit theft therein. While inside I assaulted [the victim] by striking and raping her.
>
> Count II: After feloniously entering the dwelling described in Count I, I had sexual intercourse with [the victim] who was inside the dwelling, by forcible compulsion through physical force and restraints which prevented resistance. Afterwards, I intentionally kidnapped her.
>
> Count III: After feloniously entering the building described in Count I and raping [the victim], as described in Count II, I intentionally abducted [the victim] by removing her from the dwelling and restraining her by threats of deadly force. I did this with the intent to facilitate commission of and flight from the burglary and rape.

Clerk's Papers, at 30–31.

Mr. Collicott argued before the trial court that the above counts all amounted to the same criminal conduct for the purpose of determining his offender score. The judge

agreed, but erroneously calculated the offender score for each offense by taking the other two into account as one other current offense:

Counts II & III count as one crime with regard to Count I.

Counts I & III count as one crime with regard to Count II.

Counts I & II count as one crime with regard to Count III.

Clerk's Papers, at 2. The trial court sentenced Mr. Collicott to 72 months for count 1 and 154 months each for counts 2 and 3, to serve concurrently. Both parties appealed the sentencing decision. The Court of Appeals, Division One, citing *State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237 (1987), held that the three counts were not the same criminal conduct, that each offense was completed before the subsequent ones began. The Court of Appeals also found that the Center and the rape/kidnapping victim constituted two separate victims, causing the burglary to be separate from the other crimes. Mr. Collicott sought review of this decision. We took review of the case to resolve conflicts between the decision of the Court of Appeals and *Dunaway.*

Petitioner points out the conflicts with our *Dunaway* rule. He argues that the Court of Appeals wrongly considered the burglary to be completed before the rape. He contends this is so because the prosecutor partly based the first degree burglary charge on Mr. Collicott's assault and rape of the building's occupant. In order to satisfy all the elements of first degree burglary, the criminal activity encompassed in the offense had to include the rape. Otherwise, petitioner argues, the offense would have been burglary in the second degree. Petitioner also argues that the first degree burglary—depending on the assault and rape for its definition—could only have had one victim: the woman who was raped. Last, petitioner claims that the Court of Appeals wrongly held that the kidnapping did not facilitate

the rape or burglary or flight therefrom. Petitioner maintains that he specifically pleaded guilty to first degree kidnapping with intent to facilitate the two other felonies.

I

Matters of sentencing traditionally have been within a trial judge's discretion. The Washington Sentencing Reform Act of 1981 altered this traditional formula, but the Legislature did not do away with judicial discretion: the SRA "structures, but does not eliminate, discretionary decisions affecting sentences . . ." RCW 9.94A.010. Thus, within the SRA's guidelines, a trial judge's discretion in sentencing matters remains intact. *Cf. State v. Ammons,* 105 Wn.2d 175, 181, 713 P.2d 719, 718 P.2d 796, *cert. denied,* 479 U.S. 930 (1986). On matters within SRA guidelines, an appellate court will not reverse a trial judge's sentencing decision within his discretion unless it finds a clear abuse of that discretion or misapplication of the law. *State v. McAlpin,* 108 Wn.2d 458, 467, 740 P.2d 824 (1987) (exceptional sentence excessive only if discretion abused); *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986) (same); *State v. Tunell,* 51 Wn. App. 274, 284, 753 P.2d 543 (1988) (same).

We give similar deference to a judge when he or she considers the factors which determine a defendant's offender score. The determination of what constitutes the same criminal conduct is a necessary inquiry in assessing the offender score. We uphold the trial court's decision because we find neither a clear abuse of discretion nor a misapplication of the law. The trial judge's decision also serves as an illustration of the correct application of the principles we enunciated in *State v. Dunaway, supra.*

II

In *Dunaway,* this court developed a test, largely based on *State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986), to determine if accompanying crimes encompass the

same criminal conduct. In *Dunaway,* we stated that separate convictions will be treated as one for sentencing purposes if they arise out of the same course of conduct and one criminal event is intimately related to the other. 109 Wn.2d at 214. *See also State v. Collins,* 110 Wn.2d 253, 751 P.2d 837 (1988); *State v. Adcock,* 36 Wn. App. 699, 706, 676 P.2d 1040, *review denied,* 101 Wn.2d 1018 (1984). As part of this determination,

> trial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. As it did in *Edwards,* part of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*Dunaway,* at 215. We developed one exception to this general principle: if different crimes at issue involved different victims, then a court must treat them as separate in calculating the offender score.

Our application of the test in *Dunaway* shows the contours of the correct inquiry. In *Dunaway,* we analyzed three separate cases, two involving combinations of first degree robbery and attempted first degree murder, the third a combination of first degree robbery and first degree kidnapping. Instead of looking to the defendant's subjective intent—what he or she specifically intended to do over the course of the criminal activity—we focused on the "objective intent," the basic purpose behind each offense in a theoretical sense. Such an objective, theoretical inquiry avoids fact–specific speculation about what the defendant in a given case actually intended in his or her actions. When a trial court looks to the offender's theoretical purpose behind the offense as defined in the statute and as charged in the information, it achieves more consistent results.

In viewing the robberies/attempted murders, we found that "the intent behind robbery is to acquire property while the intent behind attempted murder is to kill someone."

*Dunaway,* at 216. Because we additionally found that neither crime furthered the commission of the other, we held that the two were not part of the same criminal conduct. *Dunaway,* at 217.

With regard to the third case (kidnapping/robbery), we did find the two to be the same criminal conduct because they were intimately related. The objective remained the same between the two offenses: "Dunaway pleaded guilty to the charge of intentionally abducting his victim with the intent to commit robbery. Indeed, it was Dunaway's very intent to commit robbery that enabled the prosecutor to raise the charge from second degree to first degree kidnapping." *Dunaway,* at 217.

This third case in *Dunaway* parallels the case now before us in two significant ways. First, the charges in question were ones to which the defendant pleaded guilty. Second, the charges in that case overlapped, one offense depending on the other for definition.

■ This second parallel reveals an important factor in the "same criminal conduct" inquiry. In order to charge the defendant with kidnapping in the first degree, the prosecutor included the accompanying robbery offense as one of the elements of kidnapping. When accompanying offenses depend on each other to obtain a higher degree for each one, they are "intimately related or connected" enough to be viewed as the same criminal conduct. This principle is called "element sharing."

The element sharing inquiry reveals the need for logical charging and sentencing relationships. It would be incongruous for a prosecutor, at charging, to look to accompanying offenses in order to raise a specific offense to a higher degree and then, at sentencing, argue that the specific offense is indeed separate from the accompanying ones used to raise that offense. Such a strategy would in effect punish the defendant twice.

Prosecutors have a choice in their initial charging decision. They may choose to charge some offenses under a

lesser degree in order to separate them from other offenses for sentencing purposes. Or, they may choose to seek the higher degree of offense and openly acknowledge the offense's dependence on accompanying offenses to obtain that higher degree. They cannot, however, do both. In this case, for example, the prosecutor could have chosen to charge the defendant with second degree burglary, clearly identifying the apparently intended theft against the Center. Such a charge would have placed the burglary on a ground separate from the offenses against the victim of the rape and kidnapping. Because it would have represented separate criminal conduct, this second degree burglary charge would have made its own contribution to Mr. Collicott's offender score.

## III

In applying the *Dunaway* test to the present case, there are two separate inquiries to make: the first regarding the burglary's relation to the rape and the second regarding the kidnapping's relation to the rape and burglary. In all of the charges, the prosecutor drew upon elements of the accompanying offenses to raise their level up to the first degree.

In the prosecutor's information, the burglary charge read, in relevant part:

> [T]he defendant . . . with intent to commit the crimes of theft, rape, & assault against persons or property therein, did enter or remain unlawfully in a dwelling . . . and in entering and while in such dwelling and in immediate flight therefrom, the defendant was armed with a knife . . . and did assault [the victim] . . .

Clerk's Papers, at 59.

In the petitioner's statement on plea of guilty, he specifically responded to the burglary charge by admitting, "While inside I assaulted [the victim] by striking and raping her." Clerk's Papers, at 31. Both the initial charge and the factual admission by the defendant intertwine the burglary with the rape and assault and support the trial court's determination. This intertwining helps bring the burglary

up to the first degree.[1] Although the elements of the offense are met by the presence of either the deadly weapon or the assault and rape, the prosecutor's consistent reliance on the intent to commit rape indicates a connection between the two offenses as charged. This connection is further reflected in the defendant's statement and the police materials.

Looking at it from the perspective of objective intent and theoretical purpose, the two offenses here are even more closely connected. The purpose behind burglary is to enter a building or dwelling illegally in order to commit further criminal acts. Those further acts will be offenses in themselves, but they are still part of the burglary. Therefore, we cannot say, as the Court of Appeals did, that the burglary in this case was "completed" before the petitioner raped the victim.

A recognition of the close relationship between burglary and accompanying offenses is not new. The Court of Appeals in *State v. Edwards, supra,* referred to the Sentencing Guidelines Commission's position that burglary is "a crime in which the underlying offense would not be counted in the criminal history score." 45 Wn. App. at 381, citing Motion 84–368, Minutes, Sentencing Guidelines Comm'n, January 6, 1984.

With regard to the burglary, however, another issue arises: that of separate victims. Here, the initial victim of the burglary may have been the Center: Mr. Collicott apparently meant to steal the Center's sound equipment. In fact, if one looks to the victim's statements, one could reach the conclusion that Mr. Collicott would have done simply this had the rape victim not stepped out into the hall. But

---

[1]RCW 9A.52.020(1) states:

"A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

such an inquiry, aside from being speculative and unsupported by full factual findings, would focus on the petitioner's subjective intent. Because detailed factual findings could lead away from the objective analysis developed in *Dunaway,* we give the victim's statement no greater than equal the weight given to the information and the defendant's guilty plea.

While there may be two victims in the burglary as it occurred, the prosecutor's burglary charge focused on the crimes against the rape and kidnapping victim to raise it to the first degree. The central victim in the charging scheme, then, was also the victim of the other offenses. In addition, the two victims were also affected by one offense, not two. Thus, the issues presented in *Dunaway*—two victims in two separate offenses—is not present here. Because of the relationship between the burglary and the other crimes against the victim, we cannot disassociate her from the burglary for the purpose of identifying a separate victim to fit the *Dunaway* scheme.

We also note that the first degree rape charge itself partly depended upon the burglary for its definition. The prosecutor's information charged, in count 2:

> [T]he defendant . . . did engage in sexual intercourse by forcible compulsion with [the victim] and did use or threaten to use a deadly weapon or what appeared to be a deadly weapon and/or did kidnap the said [victim] *and/or did feloniously enter into the building where the said* [victim] was situated, the defendant at said time being armed with a deadly weapon . . .

(Italics ours.) Clerk's Papers, at 59.

With regard to the kidnapping's relationship to the burglary and rape, the prosecutor's information specifically charged:

> [T]he defendant . . . with intent to facilitate commission of the felonies of burglary and rape and flight thereafter, did intentionally abduct [the victim], a human being, the defendant at said time being armed with a deadly weapon . . .

Clerk's Papers, at 59. In his statement on plea of guilty, the petitioner admitted to this charge in language nearly identical to the charge itself. Clerk's Papers, at 31.

The offenses at issue here share elements unambiguously. Because the element of first degree kidnapping relevant to this case is abduction of another person with intent "[t]o facilitate commission of any felony or flight thereafter", the first degree charge simply would not stand without the other felonies. RCW 9A.40.020(1)(b). Seen in this light, the finding of the Court of Appeals that the burglary and rape were completed before the first degree kidnapping is not accurate. The kidnapping could not have been in the first degree had it not been for the first two crimes.

Under the analysis developed in *Dunaway*, then, Mr. Collicott's crimes all fall under the same criminal conduct.

IV

In holding that Mr. Collicott's crimes constituted the same criminal conduct, we make a distinction between the "same criminal conduct" inquiry and the doctrine of merger.

We have expressed the contours of our present merger doctrine in *State v. Johnson*, 92 Wn.2d 671, 600 P.2d 1249 (1979) (*Johnson* I), *cert. dismissed*, 446 U.S. 948 (1980) and *State v. Vladovic*, 99 Wn.2d 413, 662 P.2d 853 (1983). This doctrine is narrowly construed. As we stated in *Vladovic*:

> [T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (*e.g.*, first degree rape) the State must prove not only that a defendant committed that crime (*e.g.*, rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (*e.g.*, assault or kidnapping).

*Vladovic*, at 420–21.

Merger is appropriate where all of the criminal behavior at issue can be defined under one greater offense, even though elements of this greater offense are offenses in themselves. In the merger situation, the lesser offenses do

not include conduct that lies outside of the greater offense's definition. To determine whether merger applies, we often will look to see if the same evidence is used to supply proof for all of the merged offenses. *See Vladovic,* at 420; *State v. Johnson,* 96 Wn.2d 926, 932–33, 639 P.2d 1332 (1982) (*Johnson* II).

 Activity which amounts to the "same criminal conduct" may not all fit within the definition of one greater offense. The present case serves as an illustration. Although Mr. Collicott's kidnapping charge depended on the other two felonies to reach the first degree, those other felonies did *not* merge because they represented additional activity (*e.g.,* rape) outside the definition of kidnapping. In other words, the burglary, rape, and kidnapping charges are intimately related, but cannot be subsumed into one offense through merger. The offenses do not merge, and yet constitute the "same criminal conduct" as envisioned by RCW 9.94A.400(1)(a). *See* D. Boerner, *Sentencing in Washington* § 5.8(a) (1985).

While there may be similarities between the operation of the merger doctrine and the "same criminal conduct" analysis, we assume from its actions that the Legislature intended the two functions to be separate when it passed the Washington Sentencing Reform Act of 1981. This distinction is further indicated by the recent amendment to RCW 9.94A.400(1)(a). In 1987, the Legislature added the following definition of "same criminal conduct" to the statute: "'Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." Laws of 1987, ch. 456, § 5. We found in *Dunaway* that our objective analysis of criminal intent was consistent with this new definition. *Dunaway,* at 213 n.3. The absence of any reference to merger in the previous and present versions of RCW 9.94A.400(1)(a) leads us to conclude that the statute is meant to function independently from the merger doctrine.

## V

As found by the trial court, we also find that the offenses committed by Eric Collicott are so intimately related that they constitute the same criminal conduct as defined by RCW 9.94A.400(1)(a). However, while the trial judge in this case correctly identified the petitioner's offenses as the same criminal conduct, he incorrectly counted each offense to apply to the remaining two in calculating the offender score. Because they meet the section .400(1)(a) test, the three offenses should count as one. With this in mind, we remand the case to the trial court to redetermine the petitioner's offender score.

DORE, PEARSON, and SMITH, JJ., concur.

DOLLIVER, J., concurs in the result.

DURHAM, J. (dissenting)—So confused is the majority's analysis, and so wrong the result it reaches, that I am at a loss to understand what objective is being pursued. Presumably, the court's role in this case is to determine, consistently with controlling case law, how Collicott's offender score should be calculated. Rather than follow controlling precedent, however, the majority suggests new abstractions and formulations. The result is not a clarification of our recent—and unanimous—decision in this area, but an obfuscation that leaves the law both unclear and unpredictable.

In *State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987), we adopted the following analysis for determining when crimes "encompass the same criminal conduct" under RCW 9.94A.400(1)(a):

[T]rial courts should focus on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. . . . [P]art of this analysis will often include the related issues of whether one crime furthered the other and if the time and place of the two crimes remained the same.

*Dunaway,* at 215. We also held that crimes involving multiple victims can never encompass the same criminal conduct. *Dunaway,* at 215.

The majority in this case concludes that Collicott's burglary, rape and kidnapping offenses all encompassed the same criminal conduct. Yet, in so holding, the majority wholly ignores the questions that *Dunaway* says must be answered. The majority never considers whether any of Collicott's crimes furthered the others or if they were committed at different times and places. In fact, the majority forgoes any analysis of criminal intent at all, even though this intent forms the crucial consideration under the *Dunaway* test. Proper analysis of these *Dunaway* factors reveals that Collicott's three crimes did not encompass the same criminal conduct. Moreover, because the burglary involved a victim who was not involved in the other two crimes, additional reason exists for treating the burglary separately. Accordingly, I dissent.

I

CRIMINAL INTENT

Under the Sentencing Reform Act of 1981 (SRA), RCW 9.94A, a defendant's presumptive sentence range is calculated from two factors, one of which is the severity of his criminal history. RCW 9.94A.360; RCW 9.94A.370. As a general rule, when a defendant is sentenced for a particular offense, the trial court is to include in the criminal history not only the defendant's prior convictions, but also any other "current" offenses for which the defendant is contemporaneously being sentenced. RCW 9.94A.400(1)(a). The SRA, however, makes the following exception: if the trial court determines that "some or all of the current offenses *encompass the same criminal conduct then those current offenses shall be counted as one crime.*" (Italics mine.) RCW 9.94A.400(1)(a).

By itself, the phrase "the same criminal conduct" is open to a variety of interpretations. The Court of Appeals has

focused on the extent to which the defendant's intent changes from one crime to the next. *See, e.g., State v. Edwards,* 45 Wn. App. 378, 725 P.2d 442 (1986); *State v. Boze,* 47 Wn. App. 477, 735 P.2d 696 (1987). This test, adopted in *State v. Dunaway, supra,* is an objective one in that courts will not treat multiple crimes as one merely because the offender claims to have been motivated by a single subjective intent, such as a need for money or an intent to harass another. *See State v. Calloway,* 42 Wn. App. 420, 424, 711 P.2d 382 (1985); *State v. Huff,* 45 Wn. App. 474, 478–79, 726 P.2d 41 (1986); *Dunaway,* at 216–17. The determination of intent involves two subsidiary issues: did one crime further another and were they committed at the same time and place. Answering these questions requires more than a simple analysis of the elements of the crimes charged; courts must also look at the crimes *as they occurred* to determine the extent to which the acts constituting each crime overlapped in time and place and furthered the acts constituting another crime.

The majority completely ignores these principles in its analysis. Instead, it conjures up a new "element sharing" test. According to the majority, the determination of when two crimes encompass the same criminal conduct is dependent only on the extent to which the elements of the two crimes overlap.[2]

This is not how we interpreted the SRA's "same criminal conduct" provision in *Dunaway.* There, we held that the

---

[2]The majority takes pains to differentiate its analysis from that of the merger doctrine. Nevertheless, by refusing to incorporate the issue of criminal intent into the theory of "element sharing", the majority exhibits a confused reliance on merger principles. Under the merger doctrine, if one crime is used to elevate the degree of another crime, the first crime merges into the second, unless the injuries caused by the crimes are separate and distinct. *State v. Vladovic,* 99 Wn.2d 413, 662 P.2d 853 (1983); *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), *cert. dismissed,* 446 U.S. 948 (1980); *State v. Davis,* 47 Wn. App. 91, 98, 734 P.2d 500, *review denied,* 108 Wn.2d 1029 (1987). Merger principles involve comparison of the elements of crimes, without consideration of criminal intent. It is that intent upon which *Dunaway* focuses, a difference that the majority has failed to recognize.

determination of whether or not an offender's multiple crimes should be treated as one offense for sentencing purposes depends on whether the offender's actions show that his criminal intent varied amongst the several crimes. In some cases, analysis of the elements of the separate crimes may be relevant to this determination.[3] Nothing we said in *Dunaway,* and no other authority or reason, supports the majority's view that element sharing is determinative in and of itself, however.

The majority's reformulation of the *Dunaway* test expands the scope of the "same criminal conduct" exception far beyond that previously envisioned. Professor Boerner indicates that the exception should be narrowly construed and that it should apply to "relatively few situations." D. Boerner, *Sentencing in Washington* § 5.8(a), at 5–17 (1985). The type of case in which the exception is applicable, he notes, is when a defendant is charged with second degree burglary and possession of property stolen in the same burglary. *See* D. Boerner, at 5–17. Indeed, Professor Boerner concludes that the exception is "essentially limit[ed]" to the context of burglaries, where a single criminal objective can be easily discerned. D. Boerner, at 5–18.

Here, it cannot fairly be said that Collicott had only a single criminal objective. Armed with a knife, Collicott entered a residential counseling center, intending to commit theft, and stole some of the center's electronic equipment. While inside, he encountered a woman who was spending the night at the center. He hit her over the head, took her to another room, tied her up and raped her. Afterward, he forced her to accompany him as he drove to a house where he could get a gun. She was able to escape when he left the car to enter the house. Collicott was

---

[3] For example, evidence of a single criminal intent could be found if an element of crime A is that the offender committed that crime with intent to commit crime B. *See State v. Dunaway,* 109 Wn.2d 207, 217, 743 P.2d 1237, 749 P.2d 160 (1987) (holding that robbery and kidnapping encompassed the same criminal conduct where the kidnapping charge was raised to the first degree because the kidnapping was committed with intent to commit robbery).

charged with burglary, rape and kidnapping, all in the first degree. He pleaded guilty to all three counts. As does the majority, I will analyze the relationship between the burglary and the rape before addressing the relationship of each of these offenses to the kidnapping.

The crime of first degree burglary was completed upon Collicott's entry into the counseling center, armed with a deadly weapon, and intending to commit theft. None of these acts in any way furthered the commission of the rape. These same facts show that the crime of first degree burglary was completed before the rape was committed. The two crimes were committed in separate areas as well, in that Collicott took the woman to another room to rape her. It seems irrefutable that the burglary and rape should be treated separately.

Turning to the kidnapping charge, an objective viewing of the facts reveals a further change in Collicott's intent. The kidnapping did not begin until both the burglary and rape were completed, and it took place away from the center where the other two crimes occurred.[4] Thus, the kidnapping could not have furthered the rape or burglary. Nor is there any reason to believe the rape furthered the subsequent kidnapping. In light of these factors, Collicott's criminal intent changed when he kidnapped the visitor. Thus, like the other offenses, the kidnapping offense also should be treated separately.

My conclusion as to the kidnapping count finds support from *Dunaway* and its companion cases. Dunaway got in a car with two women at the Alderwood Mall, showed them a gun, and forced them to drive him to Seattle. He took

---

[4]Washington case law precludes any argument that the kidnapping for which Collicott was convicted actually began before the rape, that is, when Collicott took the visitor into another room to rape her. Any restraint and movement of the victim incidental to the crime of rape is not separately punishable as a kidnapping. *State v. Johnson*, 92 Wn.2d 671, 680–81, 600 P.2d 1249 (1979), *cert. dismissed*, 446 U.S. 948 (1980). Because Collicott's acts in restraining and moving his victim prior to the rape merged into the rape offense under *Johnson*, Collicott's conviction of kidnapping can only relate to his acts in forcing the visitor to accompany him in the car after the rape was completed.

money from each of them, and in Seattle told one of the women to enter a bank and withdraw money for him. When she failed to return after a short time, he left the area. He pleaded guilty to four counts: one count of first degree kidnapping and one count of first degree robbery for each victim. *Dunaway,* at 211–21. We held that the two crimes committed against each victim encompassed the same criminal conduct.[5] The crimes of kidnapping and robbery occurred at the same times and places: the kidnapping began when he ordered the women to drive to Seattle, the robberies occurred en route, and the kidnapping ended later after the failed attempt to have the money withdrawn from the bank. Moreover, because his conviction for first degree kidnapping depended on his intent to commit robbery, Dunaway's criminal intent did not change between the two crimes. *Dunaway,* at 217. By contrast, Collicott's kidnapping was committed merely to facilitate escape from his other felony, the rape already having been completed. Thus, while Dunaway's intent did not change between the two crimes, Collicott's did.

Additional insights can be drawn from the two cases consolidated with *Dunaway* and analyzed therein—*State v. Green* and *State v. Franklin.* Green robbed a doughnut shop at gunpoint, took an employee toward a back room, knocked him down, and then shot him twice. Franklin robbed a pizza parlor, forced the employee to kneel behind the counter, and then stabbed her twice in the back. Both defendants were convicted of first degree robbery and attempted first degree murder. *Dunaway,* at 210–11. In each instance, we held that the crimes were separate in nature, because the robberies were completed before the murders were attempted, and that neither crime furthered the other. We expressly rejected the notion that one crime

---

[5]The multiple victim rule, however, mandated that the two crimes involving one victim be treated separately from those involving the other victim. *Dunaway,* at 217.

furthers another when it is committed to escape the consequences of the first. *Dunaway,* at 217.

Simply put, *Dunaway* held that the commission of one crime merely to escape the consequences of another crime represents a change in intent. The same principle applies in the present case: kidnapping a victim in order to facilitate flight from a previous felony represents a change in criminal intent.

Because Collicott's criminal intent changed between each crime, they must all be separately considered.

## II
### MULTIPLE VICTIMS

My objections to the majority's reasoning extend into one additional area. *Dunaway* established that crimes involving multiple victims are treated separately. *Dunaway,* at 215. When a person commits one crime against one victim and a second crime against another victim, his conduct is more dangerous and is deserving of stronger punishment than if only a single victim is involved. *Dunaway,* at 215.

Collicott's rape and kidnapping involved only one victim—the center's overnight visitor. Due to the peculiar definition of first degree burglary, however, his burglary involved two victims. Burglary in the first degree is defined as:

> A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight therefrom, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein.

RCW 9A.52.020(1). The owner of the counseling center was the victim of the unlawful entry as well as the target of the crime he intended to commit there—theft. The visitor was the victim of the assault. Therefore, the first degree burglary in this particular case victimized more than one individual.

The majority today alters the multiple victim rule with its conclusion that there was only one "central victim" in Collicott's three crimes. *Dunaway* itself gives no indication that only "central" victims are to be counted. Admittedly, in some cases a victim might be so tangentially involved that he should not be considered in applying the multiple victim rule. This, however, is not such a case. The facts described above show that the center was directly victimized by the burglary. Indeed, Collicott fully satisfied the elements of first degree burglary before he even assaulted the center's visitor. Accordingly, the multiple victim rule mandates the conclusion that the burglary did not encompass the same criminal conduct as the other two crimes, providing an additional reason to treat the burglary separately from the other two crimes.

I would affirm the Court of Appeals.

CALLOW, C.J., and BRACHTENBACH and ANDERSEN, JJ., concur with DURHAM, J.

Reconsideration denied June 28, 1989.