# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
SEPTEMBER 7, 2023

*González C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
SEPTEMBER 7, 2023

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 100570-9 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| DAHNDRE KAVAUGN WESTWOOD, | ) | |
| | ) | Filed: September 7, 2023 |
| Respondent. | ) | |
| | ) | |

JOHNSON, J.—In 1987, the legislature amended the sentencing law to add a definition of "same criminal conduct" as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a); former RCW 9.94A.400(1)(a) (1984). Before this amendment, courts used the "same objective intent" test to determine whether a defendant's actions constituted same criminal conduct for sentencing purposes. *State v. Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987). Following the amendment, this court determined that the objective intent test from

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Dunaway* continued to be part of the same criminal conduct analysis for defining "same criminal intent." Postamendment cases have consistently applied the *Dunaway* test, requiring that courts look to the objective statutory criminal intent of the crimes charged, as did the court in *State v. Chenoweth*, 185 Wn.2d 218, 370 P.3d 6 (2016).

Some lower courts have found conflict between the analysis in *Dunaway* and that in *Chenoweth*. We take this opportunity to provide guidance on the relationship between these cases and find that no conflict exists between these preamendment and postamendment cases. We hold that the objective statutory intent analysis is the proper test. We affirm the sentencing court's decision and reverse the Court of Appeals.

## FACTS

The parties do not dispute the material facts. Dahndre Westwood entered A.B.'s house around 4:30 a.m. A.B. saw Westwood standing in her hallway and holding a knife in his hand. A.B. yelled at him to get out, but Westwood pushed A.B. into her room and onto her bed. Westwood told her to get undressed and threatened to kill her if she did not cooperate. A.B. screamed for help and pleaded for her life; she clawed at Westwood and knocked the knife out of his hand. During the struggle, Westwood nicked A.B. with the knife, leaving a scar on her cheek.

*State v. Westwood*, No. 100570-9

Westwood choked and suffocated A.B. to muffle her screams for help and hit her repeatedly on the head.

Several cars passed A.B.'s house while this transpired, and the headlights shone in the window. Westwood stopped his assault after the second or third set of headlights passed. He threatened A.B. that if she told anyone about the assault he would come back to kill her. Westwood then ran into the living room and out the front door. A.B. called 911 and was taken to the hospital by first responders shortly after.

At trial, a jury convicted Westwood of attempted rape in the first degree, assault in the first degree, assault in the second degree,[1] and burglary in the first degree. At sentencing, Westwood argued that his convictions encompassed the same criminal conduct for scoring purposes. The State disagreed and asked the court to apply the analysis from *Chenoweth*. The trial court determined that the three convictions did not constitute the same criminal conduct because each of the crimes required a different statutory intent.

Westwood appealed, arguing that *Dunaway* controlled. The Court of Appeals, Division Three, in an unpublished decision, remanded the case to the trial court for determination of whether the convictions encompassed the same criminal conduct under the analysis of *Dunaway*. The court noted that *Chenoweth* was

---

[1] This charge was dismissed by the court based on double jeopardy issues.

limited to cases of rape and incest. *State v. Westwood*, No. 35792-9-III, slip op. at

13 (Wash. Ct. App. Mar. 19, 2020) (unpublished),

https://www.courts.wa.gov/opinions/pdf/357929_unp.pdf.

In April 2020, before the trial court could decide the new sentence on

remand, the Court of Appeals, Division Two, issued *State v. Johnson*, 12 Wn. App.

2d 201, 460 P.3d 1091 (2020), *aff'd*, 197 Wn.2d 740, 487 P.3d 893 (2021). In

*Johnson*, the court applied *Chenoweth* outside the context of child rape and incest.

On remand, the State again argued that the test from *Chenoweth* is correct.

The trial court again agreed and concluded that the defendant did not prove that the

crimes constituted same criminal conduct. Westwood again appealed. The Court of

Appeals, Division Three, acknowledged the conflict with *Johnson* but reversed and

remanded Westwood's sentence with directions to apply *Dunaway*. *State v.*

*Westwood*, 20 Wn. App. 2d 582, 591-92, 500 P.3d 182 (2021). The State then

sought review by this court, which we granted. *State v. Westwood*, 199 Wn.2d

1030 (2022).

ANALYSIS

The legislature updated the Sentencing Reform Act of 1981 (SRA), ch.

9.94A RCW, in 1987, to clarify how courts will determine an offender score and

whether sentences will be served consecutively or concurrently. The relevant

section now reads:

4

*State v. Westwood*, No. 100570-9

> (1)(a) Except as provided in (b), (c), or (d) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. . . . "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

RCW 9.94A.589.

The amendment established three elements for a finding of same criminal conduct: same criminal intent, same time and place, and same victim. For separate offenses to qualify as the same criminal conduct, all three elements must be present; an absence of any one precludes a finding of same criminal conduct. *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997). The default method of calculating an offender score is to treat all current convictions as separate and distinct criminal conduct. The burden of production and persuasion thus lies on the defendant to establish that each element is met and their crimes constitute the same criminal conduct. *State v. Aldana Graciano*, 176 Wn.2d 531, 539-40, 295 P.3d 219 (2013). The sentencing court has discretion to determine whether the defendant has met their burden. "[A] sentencing court's determination of same criminal conduct

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

will not be disturbed absent an abuse of discretion or misapplication of the law."

*Aldana Graciano*, 176 Wn.2d at 541.

In this case, the second and third elements of same criminal conduct are clearly satisfied. Only the first element, same criminal intent, is disputed. Since courts have differed in their application of *Chenoweth* and *Dunaway*, we take this opportunity to clear up any confusion and clarify the proper analysis for "same criminal intent."

Prior to the amendment to the SRA defining "same criminal conduct," this court interpreted the term in *Dunaway*. The *Dunaway* court did not apply the amendment because the events in each of the consolidated cases occurred prior to the effective date of the amendment and the court declined to give the amendment retroactive effect. However, we stated definitively that the test for same criminal conduct is an objective intent analysis. The court looked at the statutory criminal intent of each of the offenses and whether the crimes furthered each other. We also expressly rejected a focus on the defendant's subjective intent and declined to consider whether the defendants actually had a consistent intent throughout their crimes. *Dunaway*, 109 Wn.2d at 216-17.

Looking closely at the *Dunaway* court analysis, we reversed the trial court determination that two counts of kidnapping and two counts of robbery against two separate victims were not the same criminal conduct. Important to our conclusion

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

was the statutory connection between the robbery and the first degree kidnapping.

We said, "Indeed, it was Dunaway's very intent to commit robbery that enabled the

prosecutor to raise the charge from second degree to first degree kidnapping. RCW

9A.40.020(1)(b); RCW 9A.40.030. Therefore, robbery was the objective intent

behind both crimes." *Dunaway*, 109 Wn.2d at 217. The court's reasoning focused

on the statutory definition of intent for each of the crimes to support its conclusion.

The *Dunaway* court specifically cited to the criminal statutes because they were

relevant to the test.

Making this point clearer, the objective test articulated in *Dunaway*, that is,

the focus on the statutory definitions, is shown by what the *Dunaway* court

concluded in the consolidated cases, *State v. Green*, 46 Wn. App. 92, 730 P.2d

1350 (1986), and *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986), which

involved two separate Court of Appeals conclusions that robbery and attempted

murder convictions did constitute same criminal conduct. The Court of Appeals in

both cases utilized a continuous course of conduct type of analysis, essentially

holding that all crimes committed during a crime spree are one. We reversed and

rejected that reasoning.

We again focused on the statutory language. We said:

> Green and Franklin each committed armed robbery and then each
> attempted to murder his victim. The murders were attempted after
> receiving the money but before leaving the premises. When viewed

*State v. Westwood*, No. 100570-9

objectively, the criminal intent in these cases was substantially different: the intent behind robbery is to acquire property while the intent behind attempted murder is to kill someone. RCW 9A.56.190; RCW 9A.32.030. The defendants have argued that the intent behind the crimes was the same in that the murders were attempted in order to avoid being caught for committing the robberies.[2] However, this argument focuses on the subjective intent of the defendants, while the cases make clear that the test is an objective one.

*Dunaway*, 109 Wn.2d at 216.

The Court of Appeals also applied the objective intent analysis in *State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986), *overruled in part by Dunaway*, 109 Wn.2d 207. The *Edwards* opinion relied on *State v. Calloway*, 42 Wn. App. 420, 711 P.2d 382 (1985). The critical language in *Calloway* being "[t]he test for the 'same course of conduct' is an objective one that is not dependent upon the offender's subjective intent, beyond the *mental state required for commission of the offense*." 42 Wn. App. at 424 (emphasis added). The *Calloway* court expressly rejected considering the defendant's own subjective intent, stating that subjective intent did not convert the two crimes into one.

Applying statutory interpretation is the most reasonable way to reach an "objective" conclusion on whether criminal intent in separate criminal acts constitute the same criminal conduct. The State must charge the required statutory intent, and the jury must be instructed on and find proof of that statutory element.

---

[2] As the Court of Appeals concluded.

*State v. Westwood*, No. 100570-9

This was the proper analysis for three separate defendants in *Dunaway* and earlier Court of Appeals cases. It has remained the proper analysis in postamendment cases.

In *Lessley*, following *Dunaway* and the SRA amendment, we stated that *Dunaway* "is entirely consistent with the statutory test set out in the 1987 amendment to the '[s]ame criminal conduct' provision." *State v. Lessley*, 118 Wn.2d 773, 777-78, 827 P.2d 996 (1992) (alteration in original). We used the same test of objective criminal intent and whether one crime furthered another. We concluded that under *Dunaway*, the burglary and kidnapping committed by defendant Lessley were not the same criminal conduct because the intent was not the same for both crimes and neither furthered the other. *Lessley*, 118 Wn.2d at 778. We again rejected the subjective intent test, noting that it was irrelevant, and the court would only be speculating if it made assumptions about the defendant's actual intent.

In *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990), we also applied the objective intent test. We looked at whether the defendant's objective intent remained the same while committing the criminal acts, in this case, intent to sell drugs. If the intent is the same, the courts must then consider whether the offenses were committed as part of the same scheme or plan and whether one crime furthered the other, with no substantial change in the nature of the criminal

objective. There, while the defendant had a single intent through each of the crimes, we determined that the defendant's acts were not the same criminal conduct because each of the drug deals he was convicted of did not happen at the same time and were not part of the same scheme or plan. *Lewis*, 115 Wn.2d at 302.

In *State v. Bobenhouse*, 166 Wn.2d 881, 896, 214 P.3d 907 (2009), we looked specifically at whether a single act, punishable by two statutes with separate criminal intent, may constitute same criminal conduct for sentencing purposes. There we rejected the defendant's argument that first degree child rape and first degree incest involve the same criminal intent, sexual intercourse. Such a conclusion required the court to speculate about the defendant's subjective intent, an analysis we consistently rejected. We quoted from another case, *State v. Calle,* 125 Wn.2d 769, 888 P.2d 155 (1995), that "'the Legislature intended to punish incest and rape as separate offenses, even though committed by a single act.'" *Bobenhouse*, 166 Wn.2d at 896 (quoting *Calle*, 125 Wn.2d at 780). In *Calle*, the court looked at the differing purposes of the incest and rape statutes and their different locations in the criminal code as evidence of the legislature's intent to punish both as separate offenses. In both of these cases, the statutory intent was relevant to the analysis.

*Chenoweth* built on the analysis in these and other postamendment cases. In *Chenoweth*, a case involving incest and rape of a child, the defendant made the

10

same argument as in *Bobenhouse*, that two crimes based on a single act constitute the same criminal conduct as a matter of law. We looked solely at the statutory intent of each of the crimes. We concluded that when objectively viewed under the statutes, the two crimes of incest and rape of a child involved separate intent. "Chenoweth's single act is comp[o]sed of separate and distinct statutory criminal intents and therefore under RCW 9.94A.589(1)(a) do[es] not meet the definition of 'same criminal conduct.'" *Chenoweth*, 185 Wn.2d at 223.

Westwood makes two arguments: that *Dunaway* was not explicitly or implicitly overruled by this court in *Chenoweth* and that *Chenoweth* applies only to cases involving rape of a child and incest. On the first point, he is correct, *Dunaway* is still good law, and *Chenoweth* does not mention *Dunaway*, let alone overrule it. On the second point, he is incorrect. As outlined above, *Chenoweth* uses an analysis that has consistently been applied, first in *Dunaway* and later in postamendment cases, looking at the objective statutory intent of the crimes charged in order to determine the criminal intent element. The analysis extends to cases beyond those involving incest and rape of a child. Westwood also contends that *Chenoweth* and *Bobenhouse* directly conflict with *Dunaway*. He builds on this self-constructed conflict to urge overruling *Chenoweth* and *Bobenhouse*, arguing that *Chenoweth* is harmful because it causes confusion in the lower courts. He is incorrect that any conflict exists.

11

*State v. Westwood*, No. 100570-9

Under a proper reading of both cases, *Chenoweth* and *Dunaway* are not inconsistent and neither overrules the other. The court in *Chenoweth* looked at the statutory intent of the offenses, as did the court in *Dunaway*. The statutory intent is relevant in determining whether the objective intent prong is satisfied. Looking to any other source of intent has the potential to lean too closely to the subjective analysis that we have always rejected.

To further clarify when same criminal intent is satisfied, in cases where we determined the crimes did encompass the same criminal conduct, there was a connection in the statutory definitions, with the statutory intent element of the crimes being either identical or very similar. In *State v. Tili*, 139 Wn.2d 107, 985 P.2d 365 (1999), we concluded that the defendant's three rape convictions were the "same criminal conduct" after looking at whether the three acts of rape involved the same objective criminal intent. Tili was charged with multiple counts of the same crime (rape) and Tili's actions consisted of an unchanging pattern of conduct, coupled with an extremely close time frame. There was strong support for the conclusion that his objective criminal intent did not change and was the same criminal conduct, as it was the only intent necessary to support the convictions.

Likewise, in *State v. Garza-Villarreal*, 123 Wn.2d 42, 49, 864 P.2d 1378 (1993), we looked at the statutory intent of the crimes charged, determining that possession with intent to deliver any substance was the same objective criminal

12

intent, and delivery of any controlled substance was also the same objective criminal intent. We concluded that each of the crimes were committed in furtherance of the same objective criminal intent, for Joseph Casarez an intent to deliver a controlled substance in the present and for Francisco Garza-Villareal an intent to deliver a controlled substance in the future, and thus under the *Dunaway* test were considered the same criminal conduct.

In determining "same criminal conduct," it makes sense to look at the statutory definitions of the crimes to determine the objective intent, and indeed, this has consistently been the starting point for our cases. When read properly, *Dunaway* relies on the statutory definitions of "intent" for each of the crimes to determine objective intent. This is consistent with *Chenoweth*. If the objective intent for the offenses were the same or similar, courts can then look at whether the crimes furthered each other and were part of the same scheme or plan. If the actions occurred in close proximity, and the nature of the crime did not change significantly throughout, the offenses may be considered the same criminal conduct for sentencing purposes. This analysis prevents courts from speculating about the defendant's proposed subjective purpose and instead looks solely at the objective intent and whether the crimes were closely related enough to justify a finding of same criminal conduct.

*State v. Westwood*, No. 100570-9

In this case, Westwood was convicted of attempted rape in the first degree, assault in the first degree, and burglary in the first degree. Assault in the first degree is a serious crime, which requires "intent to inflict great bodily harm." RCW 9A.36.011. Attempted rape in the first degree requires intent to commit the crime of rape. RCW 9A.28.020. First degree burglary requires "intent to commit a crime against a person or property." RCW 9A.52.020. It makes no sense to conclude that a person who has been found guilty of attempted rape in the first degree, first degree burglary, and first degree assault should receive the same punishment as a person convicted of just one of these crimes. The legislature certainly intended that the intent necessary to prove attempted rape, first degree burglary, and first degree assault differ.

The amendment to the statute requires that we apply the objective intent analysis, little different than the objective analysis outlined in *Dunaway*. Under *Chenoweth*, and under a proper reading of *Dunaway*, this means that we look to the statutory intent of the crimes as the starting point in determining whether the crimes should be treated as one. Here, separate and distinct charges were brought, each alleging the statutory intent element necessary to support each charge; the State produced evidence and testimony to support each charge; the jury was instructed on the elements for each charge, including the separate statutory intent of each; the jury found beyond a reasonable doubt that each separate charge was

14

*State v. Westwood*, No. 100570-9

proved; and no challenge is raised here concerning the sufficiency of the evidence supporting any of the charges. The objective intent analysis points to the conclusion that Westwood's crimes did not have the same objective criminal intent and that the crimes did not further the others.

Accordingly, we affirm the sentencing court's conclusion and reverse the Court of Appeals.

_____
Johnson, J.

WE CONCUR:

_____
González, C.J.

_____
Owens, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____

*State v. Westwood (Dahndre Kavaugn)*

No. 100570-9

MADSEN, J. (dissenting)—For decades, Washington courts have followed *State v. Dunaway*, which established the objective intent test, to determine same criminal conduct. 109 Wn.2d 207, 214-15, 743 P.2d 1237, 749 P.2d 160 (1987). But, in *State v. Bobenhouse*, 166 Wn.2d 881, 896, 214 P.3d 907 (2009), this court began to conflate the same criminal conduct test with the test for double jeopardy, leading to the confusion evidenced in this case. Instead of providing clarity, the majority reinvents the objective intent test and says that the test actually focuses on the statutory definitions of the crimes to determine the objective intent.

Unfortunately, the majority's view is an incorrect interpretation of our cases that have consistently applied the objective intent test since *Dunaway* and will only add to the confusion. Worse, though, the majority takes away an important tool that the legislature gave to trial judges to ameliorate the harsh effect of prosecutorial overcharging. The legislature provided that crimes, when committed with the same objective intent to further a criminal act against the same victim at the same time, regardless of their statutory elements, would be punished only once. Without this statutory protection,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

prosecutors may charge multiple crimes arising in a single incident, each carrying its own punishment, and a trial judge would be required to impose a sentence for each crime. By folding the statutory same criminal conduct test into a double jeopardy analysis, the majority removes the judicial discretion for trial judges intended by the legislature. In a criminal justice system plagued by racial and income inequality, the majority's decision is extremely unfortunate.

This court has been given the opportunity to correct the schism created by *Bobenhouse* and *State v. Chenoweth*, 185 Wn.2d 218, 370 P.3d 6 (2016), and we should take it. A correct interpretation and application of the objective intent test under *Dunaway* focuses on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next, not on the statutory criminal intent, which is the focus of a double jeopardy analysis. I disagree with the majority and respectfully dissent.

## Discussion

The majority, in analyzing *Dunaway*, concludes that the test to determine same criminal conduct is an objective intent test whereby courts focus on the *statutory* criminal intent of the crimes. Majority at 6-7. Initially, it is difficult to square the idea that the statutory criminal intent *can* be objective—it cannot. More importantly, for decades, this court and the Court of Appeals have said it is not. Despite its claims and assurances to the contrary, the majority interprets *Dunaway* and its progeny incorrectly.

To understand the original statutory protection put in place by the legislature, we must go back the to the beginning, starting with *Dunaway*, and discuss each case

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

following *Dunaway* in detail because the facts are related to the application of the

*Dunaway* standard.

### 1. *Dunaway*'s Same Criminal Intent Test

Though *Dunaway* is our starting point, it began with a preface. *Dunaway* looked

first to *State v. Edwards*, 45 Wn. App. 378, 725 P.2d 442 (1986), *overruled in part by*

*Dunaway*, 109 Wn.2d 207, and concluded based on legislative intent, that courts should

focus on the extent to which the criminal intent, as objectively viewed, changed from one

crime to the next in deciding if crimes encompass the same criminal conduct for purposes

of calculating a defendant's offender score. *See Dunaway*, 109 Wn.2d at 214-15.

*Dunaway* overruled *Edwards* on other grounds; *Edwards*' same criminal intent teachings

remain instructive.[1]

In *Edwards*, a defendant pleaded guilty to kidnapping in the second degree and

assault in the second degree. Edwards' former supervisor gave Edwards a ride after he

visited her to complain about his last paycheck. *Edwards*, 45 Wn. App. at 379. When

the two met, Edwards entered the car, drew a handgun, and pointed the handgun at his

supervisor. The supervisor then drove Edwards around for some distance before she

parked at a fire station and called for help. A paramedic, who worked at the fire station,

approached the car. Edwards waved the handgun at the paramedic, and the paramedic

---

[1] *Dunaway* overruled *Edwards* in part. In *Edwards*, the Court of Appeals determined that crimes committed against two victims could encompass the same criminal conduct. *Dunaway* disagreed and held that "[c]onvictions of crimes involving multiple victims must be treated separately." 109 Wn.2d at 215. *Edwards*' overruling does not impact this case because the present case involves crimes against one victim.

No. 100570-9
Madsen, J., dissenting

backed away. The waving of the handgun at the paramedic supported the assault charge, and the abduction of the supervisor supported the kidnapping charge.

At sentencing, the trial judge decided each crime should be treated separately as part of Edwards' criminal history. *Id.* The Court of Appeals reversed, concluding that Edwards' kidnapping and assault charges encompassed the same criminal conduct for three reasons. *Id.* at 382.

First, the kidnapping was intimately related to the assault. In other words, Edwards' criminal objective remained the same and there was no substantial change in the nature of Edwards' criminal objective between the kidnapping and the assault. *Id.*; *see also State v. Adcock*, 36 Wn. App. 699, 706, 676 P.2d 1040 (1984) (determining that a criminal event that is intimately related or connected to another criminal event is held to arise out of the same criminal conduct); *see also State v. Erickson*, 22 Wn. App. 38, 42-44, 587 P.2d 613 (1978) (concluding that a charge of unlawfully possessing a pistol found in the defendant's possession at the time of arrest was intimately connected to a charge of second degree burglary).

Second, the commission of the kidnapping continued when Edwards assaulted the paramedic. *Edwards*, 45 Wn. App. at 382; *see State v. Calloway*, 42 Wn. App. 420, 423-24, 711 P.2d 382 (1985) (concluding that two or more offenses are considered to have been committed as part of a "'single course of conduct'" if during that conduct "'there was no substantial change in the nature of the criminal objective'" (quoting MODEL SENT'G & CORR. ACT §§ 3-105, 3-107 (1979))).

4

No. 100570-9
Madsen, J., dissenting

Finally, the assault on the paramedic was committed in furtherance of the supervisor's kidnapping. *Edwards*, 45 Wn. App. at 382.

The *Edwards* court also drew from Washington's Juvenile Justice Act of 1977 (JJA), ch. 13.40 RCW, in concluding that "same criminal conduct" should be determined by an objective intent standard. *See id*. at 380. Under the JJA, separate convictions may be treated as one if they arise out of the same course of conduct. Former RCW 13.40.020(6)(a) (1977).[2] The Washington State Sentencing Guidelines Commission also noted former RCW 9.94A.400(1) (1984) included the phrase "same criminal conduct." In its 1984 sentencing manual, the commission explained, "'Subsection (1) includes the phrase "same criminal conduct." A Washington appellate court, in another context, interpreted this ph[r]ase to mean: "A criminal event which is intimately related or connected to another criminal event." This language comes from *State v. Adcock*, 36 Wn. App. 699 (1984)[,] interpreting the juvenile code's phrase "the same course of conduct." Also see *State v. Erickson*, 22 Wn[.] App. 38[] (1978).'" *Dunaway*, 109 Wn.2d at 215 n.5 (some alterations in original) (quoting WASH. STATE SENT'G GUIDELINES COMM'N, SENTENCING GUIDELINES § 9.94A.400, cmt. at II-40 (1984)).

---

[2] Former RCW 13.40.020(6)(a) provides that

> (6) "Criminal history" shall include all criminal complaints against the respondent where:
> (a) The allegations were found correct by a juvenile court. In any judgment where a respondent is convicted of two or more charges arising out of the same course of conduct, where one charge is included within the other, then only the highest charge from among these shall count as an offense for the purposes of this chapter.

5

No. 100570-9
Madsen, J., dissenting

The majority's view fails to recognize that *Dunaway* adopted the *Edwards* standard: whether (1) the criminal intent, as objectively viewed, changed from one crime to the next, (2) one crime furthered the other, and (3) the time and place of the two crimes were the same. *Id.* at 214-15 (citing *Edwards*, 45 Wn. App. at 382).[3]

Instead of following the standard as established in *Edwards*, the majority focuses on the statutory definitions of criminal intent and opines that the *Dunaway* court relied on statutory language in resolving *State v. Green*, 46 Wn. App. 92, 730 P.2d 1350 (1986), and *State v. Franklin*, 46 Wn. App. 84, 729 P.2d 70 (1986).[4] Majority at 7. The majority is incorrect in its new and surprising interpretation of *Dunaway*. To uncover this astonishing reading of *Dunaway*, we must first examine its reasoning in *Green* and *Franklin*.

In *Green*, a jury convicted the defendant of first degree robbery and attempted first degree murder when the defendant entered a donut shop, pointed a gun at an employee, demanded money, hit the employee on the head with his gun, and shot him twice in the back. *Dunaway*, 109 Wn.2d at 210.

Applying the objective intent test, Green's criminal intent, as objectively viewed, changed from one crime to the next. Green's intent to commit first degree robbery, when viewed objectively, was complete when the employee handed the defendant the money.

---

[3] Prior to our decision in *Dunaway*, the legislature amended the relevant statutes to include the definition of "same criminal conduct" now at issue. However, the court in *Dunaway* declined to apply the statutory amendment because the conduct predated the amendment.

[4] The court consolidated *State v. Green* (No. 6872-2-III), *State v. Franklin* (No. 7049-2-III), and *State v. Dunaway* (Nos. 53482-9, 53574-4).

6

No. 100570-9
Madsen, J., dissenting

*Id.* at 216. The defendant formed a *different* intent, an intent to murder, when he hit the employee with his gun and shot the employee twice in the back. *Id.*

Applying the second element in the *Edwards* standard to these facts, when viewed objectively, it is clear that one crime did not further the other. The defendant completed the crime of first degree robbery when he pointed a gun at the employee, told the employee to open the cash register, and received money. *Id.* Objectively viewed, the defendant's intent changed from an intent to steal money to killing a witness when he shot the employee *twice in the back* before running out of the store. *Id.* The *Dunaway* court correctly recognized that the attempted murder did not further the taking since it occurred after the defendant had received the money and that the objective intent changed from taking the money to killing the witness. *Id.*

Similarly, in *Franklin*, a jury convicted the defendant of first degree robbery and attempted first degree murder when the defendant entered a pizza parlor, brandished a knife to an employee, demanded money from the employee, and stabbed the employee *twice in the back* before the employee escaped. *Id.* at 211.

Viewed objectively, the defendant's criminal intent changed from one crime to the next. The defendant's intent to commit first degree robbery concluded when he pulled out a knife, showed it to the employee, demanded money from the employee, and received the money. The defendant formed a *different* intent to commit attempted first degree murder when he told the employee to get on her knees and put her hands behind her back before stabbing the employee twice. *Id*. at 216.

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Like the defendant in *Green*, the defendant's crime in *Franklin* did not further the other. Franklin's crime of first degree robbery was completed when he entered the pizza parlor, pulled a knife on the employee, demanded money, and received money. The defendant's objective intent changed to eliminating a witness when he stabbed the employee twice in the back.

Unlike *Green* and *Franklin*, the defendant's criminal intent in *Dunaway*, as objectively viewed, did not change from one crime to the next. In other words, the defendant's intent remained the same: his objective was to commit robbery. *See id.* at 217. The defendant's crime of first degree kidnapping furthered the intent to commit first degree robbery when the defendant unlawfully entered the victims' car, brandished a gun, and forced them to drive to Seattle. *Id.* at 211. Upon arriving in Seattle, the defendant told one of the victims to enter a bank and retrieve money. *Id.* When that victim did not return, the defendant told the second victim to move from the driver's seat so that he could drive and escape. *Id.* at 212. Clearly, the kidnapping was a part of the objective intent to rob the victim and to further the robbery. *See generally id.* at 211-12, 217.

As to each of the defendants in *Green*, *Franklin*, and *Dunaway*, this court considered the *Edwards* standard, applied the standard to each case, and concluded that the inquiry, when determining criminal intent under a same criminal conduct analysis, is to examine whether the criminal intent, as objectively viewed, changed from one crime to the next.

8

No. 100570-9
Madsen, J., dissenting

2. <u>The Majority Misunderstands *Edwards*' Reliance on *Calloway*</u>

The majority now claims that the Court of Appeals' conclusion in *Edwards* relied on *Calloway*. Majority at 8. Again, the majority is incorrect. While the court in *Edwards* indeed looked to *Calloway*, it did so only to establish that there must be a "physical or causal connection between offenses." *Edwards*, 45 Wn. App. at 381.

In *Calloway*, a juvenile defendant, Darrin Calloway, was convicted of one count of taking a motor vehicle without the owner's permission in 1984. 42 Wn. App. at 421. Nearly a year later, Calloway was convicted of attempted burglary in the second degree and possessing stolen property in the third degree. Calloway admitted to the police that he and his cousin planned to "'hit a couple of houses'" as they walked to Calloway's home. *Id.* at 422. When Calloway and his cousin arrived at Calloway's house, they noticed that Calloway's neighbor was gone. The two then burglarized the neighbor's home. Afterward, they walked to a bus stop, saw an empty home, and committed the second burglary. *Id.*

At sentencing, Calloway argued that the court erred when it committed him to 13 to 16 weeks of confinement for the first burglary and another 21 to 28 weeks of confinement for the second burglary. Both burglaries occurred within one hour. *Id.* He maintained that because both robberies were committed within one hour for the sole purpose of gaining money to purchase drugs, the robberies were part of the same course of conduct. *Id.*

9

No. 100570-9
Madsen, J., dissenting

The Court of Appeals held that Calloway's robberies did not arise from the same course of conduct. *Id.* at 424-25. Under the JJA, Calloway's standard range of disposition is determined by age, the offense committed, and criminal history. In determining his criminal history, only the highest charge between offenses counts as an offense if the offenses arose "'out of the same course of conduct.'" *Id.* at 423. The JJA, however, failed to define "same course of conduct." *Id.* As a result, the court in *Calloway* turned to *Adcock*. *Id.* at 423-24. Relying on *Webster's Third New International Dictionary* definition for "course of,"[5] the *Adcock* court determined that the defendant's offenses were not "committed as part of any ordered or continuing sequence or under any recognizable scheme or plan." 36 Wn. App. at 706. *Adcock* additionally noted that "[a] criminal event which is intimately related or connected to another criminal event is held to arise out of the same criminal conduct." *Id.*; *see also Erickson*, 22 Wn. App. at 44 (determining that a defendant's unlawful possession of a pistol at the time of arrest was intimately related to a charge of second degree burglary and arose out of the same criminal conduct).

Expanding on *Adcock*'s definition of "same course of conduct," *Calloway* concluded that "[t]he phrase implies . . . some *physical* or *causal* connection between offenses." 42 Wn. App. at 423 (emphasis added). Important to its conclusion, the *Calloway* court indeed focused on the physical and causal connection between the two

---

[5] "[A]n ordered continuing process, succession, sequence, or series." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 522 (1969).

10

No. 100570-9
Madsen, J., dissenting

burglaries at issue: "The criminal objectives of *each* crime, though identical, that is

burglary of a house, were *distinct* and were *separately* realized upon the completion of

*each* crime." *Id.* at 424 (emphasis added). Thus, the burglaries did not arise out of the

same course of conduct because "[t]he facts indicate that the burglaries were random

crimes, committed as the opportunities arose" and because "[t]hey were committed

during *separate* courses of conduct." *Id.* (emphasis added).

*Calloway* did not, as the majority suggests, focus on or discuss the statutory intent

between crimes. Instead, the court emphasized the importance of the physical or causal

connection between the crimes and whether the criminal objective of each crime was

distinct and separately realized. *See generally id.*

3. *State v. Lessley* Applied the *Dunaway* Standard

While I agree with the majority that *State v. Lessley*, 118 Wn.2d 773, 777, 827

P.2d 996 (1992), affirmed *Dunaway*, the majority misreads *Lessley* in saying that the case

applied a statutory intent test to determine objective criminal intent under a same criminal

conduct analysis. *See* majority at 9.

*Lessley* considered an amendment to former RCW 9.94A.400(1)(a), which added

to the statute the definition of "same criminal conduct" and reaffirmed the test for same

criminal conduct adopted in *Dunaway*. 118 Wn.2d at 777 (quoting LAWS OF 1987, ch.

456, § 5, at 1980). Specifically, *Lessley* held that "[t]aken together, RCW

9.94A.400(1)(a) and *Dunaway* require three elements: the same objective criminal intent

11

No. 100570-9
Madsen, J., dissenting

(which can be measured by determining whether one crime furthered another), the same time and place, and the same victim." *Id.* at 778.

In *Lessley*, the defendant, Dallas Lessley, pleaded guilty to burglary in the first degree, kidnapping in the second degree, kidnapping in the first degree, and intimidating a witness. *Id.* at 776. One evening, Lessley, while armed with a gun, forcefully broke into the home of George Thomas, Janette Thomas, and Dorothy Olson—Mr. and Mrs. Thomas' daughter—and demanded to see Olson. *Id.* at 775. While Mr. Thomas escaped from the house and called the police, Lessley commanded Olson and Mrs. Thomas into Olson's car, where he forced Olson to drive and Mrs. Thomas to accompany them. *Id.* Lessley threatened to shoot Mrs. Thomas if she refused. *Id.*

Lessley then told Olson to drive to a house in Maple Valley. *Id.* Upon arrival, Lessley pointed the gun at Mrs. Thomas and ordered her to step out of the car. *Id.* Lessley then drove himself and Olson toward North Bend, stopped the car, assaulted Olson, and threatened to shoot her. *Id.* After this altercation, Lessley and Olson returned to the Maple Valley house, picked up Mrs. Thomas, and took her home. *Id.* Lessley then took Olson to another house in White Center, where the police arrested him. *Id.*

At sentencing, Lessley argued that the charges of burglary in the first degree and kidnapping in the first degree were the same criminal conduct and should be counted as one in determining his sentence because he entered the home with the intent to take Olson away. *Id.* at 776. The trial court disagreed, and the Court of Appeals affirmed that the first degree burglary and first degree kidnapping convictions did not encompass the

12

No. 100570-9
Madsen, J., dissenting

same criminal conduct. *Id.* at 777. Important to its conclusion, the court recognized that the *Dunaway* test "focuses on the extent to which a defendant's criminal intent, as objectively viewed, changed from one crime to the next" and that "[u]nder that test, if one crime *furthered* another, and if the time and place of the crimes remained the same, then the defendant's criminal purpose or intent did not change and the offenses encompass the same criminal conduct." *Id.* Most importantly, the court in *Lessley* expressly stated that "[t]aken together, [former] RCW 9.94A.400(1)(a) and *Dunaway* require three elements: the same objective criminal intent (which can be measured by determining *whether one crime furthered another*), the same time and place, and the same victim." *Id.* at 778 (emphasis added).

Under a correct application of the *Dunaway* test, Lessley's criminal intent, when viewed objectively, changed. *Id.* Lessley's intent to commit first degree burglary was completed when he forcefully entered the residence while armed with a gun. In his concurring opinion, Judge William Baker described Lessley's objective as follows:

> Crimes which he objectively intended to commit [in the home] included the property damage caused when he broke in, the assault against Mr. Thomas, and the assaults against Mrs. Thomas and his former girl friend Dorothy Olson. His subjective intent is irrelevant, and we would only be speculating to assume that that subjective intent was to kidnap and [assault] his former girl friend. He may initially only have intended to confront her.

*State v. Lessley*, 59 Wn. App. 461, 468-69, 798 P.2d 302 (1990). Lessley's criminal intent, as objectively viewed, thus changed when he moved from the burglary to the kidnapping. *Lessley*, 118 Wn.2d at 778.

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

As to the second element under the *Dunaway* test, it is clear that the crime of burglary in the first degree did not further the crime of kidnapping in the first degree. *Id.*

Finally, as to the third element, the time and place of the crimes were not the same. The burglary in the first degree occurred at the Thomases' residence in Seattle. The kidnapping in the first degree occurred over several hours in multiple cities, including Seattle, Maple Valley, North Bend, and White Center. *Id.* at 778.

Contrary to the majority's assertion, the court in *Lessley* did not rely on or discuss the burglary or kidnapping statutes in determining criminal intent. Instead, the court looked at whether Lessley's criminal intent, as objectively viewed, changed between the first degree burglary conviction and the first degree kidnapping conviction.

4. The Majority Misconstrues *State v. Lewis*

Next, the majority cites *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990), as support. Majority at 9-10. While *Lewis* indeed extrapolated the test from *Dunaway*, I must disagree with the majority's view that the *Lewis* court examined statutory criminal intent under a same criminal conduct analysis.

In *Lewis*, this court determined that a defendant's conviction of selling cannabis on three occasions to a police informant and attempted delivery on a fourth occasion did not encompass the same criminal conduct. 115 Wn.2d at 303. There, the defendant, Jeffery Lewis, delivered cannabis to a police informant on three occasions between April and May 1987. *Id.* at 296. On Lewis' fourth attempt to deliver the drug, the police arrested him. *Id.* at 297. The police executed a search warrant on Lewis' multiple

14

No. 100570-9
Madsen, J., dissenting

properties and found hundreds of cannabis plants. Lewis admitted that he owned the

plants, and the prosecutors charged him with seven separate counts for violating the

Uniform Controlled Substances Act, ch. 69.50 RCW. *Id.*

The trial court found Lewis guilty of each of the seven counts and sentenced him

to 43 months of confinement. *Id.* On appeal to this court, Lewis argued that the trial

court should have dismissed the deliveries and attempted delivery charges and that the

charges should not have been factored in determining his offender score. *Id.* He

contended that the three deliveries and the attempted delivery of cannabis encompassed

the same criminal conduct because the four crimes were committed through the police

and occurred between the same parties and at the same location. *Id.* at 297-98. This

court recognized that "[t]he applicable test to analyze whether a series of actions by a

defendant encompassed the same criminal conduct was formulated . . . in *State v.*

*Dunaway*, 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987)." *Id.* at 301.

The court focused "'on the extent to which the criminal intent, *as objectively*

*viewed*, changed from one crime to the next,'" and not on the statutory intent of the

crimes. *Id.* (quoting *Dunaway*, 109 Wn.2d at 215) (emphasis added). Drawing from

*Dunaway*, the court in *Lewis* applied the *Edwards*' factors and held that "[b]ecause the

four violations of the Uniform Controlled Substances Act by the defendant were carried

out on separate dates and Lewis formed a *separate objective criminal intent* to execute

each act, his crimes were not 'same criminal conduct.'" *Id*. at 303 (emphasis added).

15

No. 100570-9
Madsen, J., dissenting

As to the first element under *Dunaway*, Lewis' criminal intent, as objectively viewed, changed from one crime to the next because he formed a different intent between each delivery.

As to the second element, "[Lewis'] acts were not part of a single criminal conduct because the commission of one drug deal did not further the commission of the other drug deals, and they were not part of a recognizable scheme or plan." *Id.* at 302. In other words, Lewis' three deliveries of cannabis did not further his fourth attempted delivery.

Finally, as to the third element, while the time and place of the drug deliveries and the attempted delivery occurred at the same time and location, the court recognized that "the same time and place analysis applies only when there is a continuing sequence of criminal conduct." *Id.* The court concluded that Lewis' three deliveries and attempted delivery did not occur at the same time and place because the crimes were executed on separate dates. *Id.* at 303. In other words, this court concluded that Lewis' crimes of delivery and attempted delivery did not encompass the same criminal conduct by examining whether the criminal intent, as objectively viewed, changed from one crime to the next and not through an analysis of the crimes' statutory intent.

### 5. *Dunaway*, *Bobenhouse*, and *Chenoweth* Are Irreconcilable

Now comes the majority's biggest error—it attempts to square the *Dunaway* test with this court's decision in *Bobenhouse*. Majority at 10-11. In *Bobenhouse*, a jury convicted Phillip Bobenhouse of three counts of first degree rape of a child and two counts of first degree incest. 166 Wn.2d at 886-87. On appeal, Bobenhouse argued that

16

No. 100570-9
Madsen, J., dissenting

the trial court abused its discretion when it found that the child rape and incest charges, which stemmed from forcing his young children to have sex, did not encompass the same criminal conduct. *Id.* at 896. The court rejected this argument in one sentence, stating, "Bobenhouse's argument must fail in light of the precedent set by our decision in [*State v.*] *Calle*[, 125 Wn.2d 769, 888 P.2d 155 (1995)]." *Id.*

*Bobenhouse*, however, erroneously applied *Calle*. *Calle* involved double jeopardy concerns arising out of a single act of intercourse. *See generally* 125 Wn.2d at 771. There, we held the double jeopardy clause did not prevent convictions for both second degree rape and first degree incest arising out of a single act of intercourse. *Id.* at 782. Indeed, *Calle* reiterated that it solely addressed double jeopardy. *Id.* at 771 ("At issue in this case is whether the Defendant's convictions for first degree incest and second degree rape violate the Fifth Amendment's protection against *double jeopardy* because they arose from a single act of intercourse" (emphasis added)), 774 ("[D]*ouble jeopardy* is at issue here because of the possibility that rape and incest are the same offense when they arise out of the same act of intercourse, regardless of the concurrent sentences." (emphasis added)), 776 ("Our review here is *limited* to assuring that the court did not exceed its legislative authority by imposing multiple punishments for the same offense." (emphasis added)).

Herein lies the confusion. *Bobenhouse* quoted *Calle*, but that language appears in *Calle*'s analysis of double jeopardy and does not relate to the same criminal conduct analysis. 166 Wn.2d at 896 (quoting *Calle*, 125 Wn.2d at 780). Further, our case law has

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

repeatedly held that the double jeopardy analysis and the same criminal conduct analysis are separate and distinct. *See State v. Hatt*, 11 Wn. App. 2d 113, 139, 452 P.3d 577 (2019) ("A claim that the trial court erred in determining whether two crimes constituted the same criminal conduct *differs* from a double jeopardy violation claim." (emphasis added)); *see also State v. French*, 157 Wn.2d 593, 611, 141 P.3d 54 (2006) ("A double jeopardy violation claim is distinct from a 'same criminal conduct' claim and requires a *separate* analysis." (emphasis added)). As this court determined in *State v. Tili*,

> [T]he "same criminal conduct" analysis under the Sentencing Reform Act of 1981, and the "unit of prosecution" analysis under double jeopardy are distinct. The "unit of prosecution" analysis is involved during the charging and trial stages, focusing on the Legislature's intent regarding the specific statute giving rise to the charges at issue. The "same criminal conduct" analysis, on the other hand, involves the sentencing phase and focuses on (1) the defendant's criminal objective intent, (2) whether the crime was committed at the same time and place, and (3) whether the crime involved the same victim.

139 Wn.2d 107, 119 n.5, 985 P.2d 365 (1999) (citation omitted).

After its discussion of *Bobenhouse*, the majority claims that *Chenoweth* built on the analysis in *Bobenhouse* and the cases following *Dunaway*. Majority at 10. But that is incorrect. Rather than follow clear precedent applying *Dunaway*, the majority relies on *Chenoweth*, which misstates the law.

In *Chenoweth*, the defendant, Chad Chenoweth, was convicted of six counts of third degree child rape of his daughter and six counts of first degree incest. 185 Wn.2d at 220. The child rape and incest counts were based on six occurrences that each involved a single act. *Id.* Chenoweth, at sentencing, moved the court to determine that the first

18

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

degree incest counts encompassed the same criminal conduct as the third degree child rape count. *Id.* Relying on *Bobenhouse*, the trial court concluded that the incest counts did encompass the same criminal conduct as the child rape counts, and therefore, counted each conviction separately for sentencing purposes. *Id.*

Pursuant to *Bobenhouse*, the Court of Appeals affirmed Chenoweth's sentence. *Id.* This court in *Chenoweth* ultimately held that "the same act constituting rape of a child and incest is not the same criminal conduct for purposes of sentencing." *Id.* at 224. *Chenoweth* reasoned that "rape of a child and incest are separate crimes because they involve distinct criminal intents." *Id.* at 221. The court then looked to the corresponding statutes and determined that because incest and rape of a child do not have the same statutory intent, Chenoweth's crimes did not encompass the same criminal conduct. *Id.* at 223.

Here, the majority's analysis and application of *Chenoweth* is incorrect. *Chenoweth* failed to follow decades of precedent established by *Dunaway* and, instead, opined that courts should focus on the statutory criminal intent to determine whether crimes encompass the same criminal conduct for purposes of sentencing. Under *Dunaway*, however, courts are required to look at whether "the offender's 'criminal intent, as *objectively viewed*, changed from one crime to the next.'" *State v. Haddock*, 141 Wn.2d 103, 113, 3 P.3d 733 (2000) (emphasis added) (quoting *Dunaway*, 109 Wn.2d at 215). Correctly applying *Dunaway*, Chenoweth's criminal intent, when viewed objectively, remained the same between the first degree incest and third degree child rape

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

counts. Chenoweth's objective criminal purpose was to have sex with his minor daughter. *See Chenoweth*, 185 Wn.2d at 230 (Madsen, C.J., dissenting).

It is clear, as the majority acknowledges, that *Dunaway* has not been expressly overruled, has been consistently followed for over 40 years, and was reaffirmed after the 1987 amendment by this court in *Lessley*; and the legislature has not revised the definition of same criminal conduct. *See, e.g.*, *1000 Friends of Wash. v. McFarland*, 159 Wn.2d 165, 181, 149 P.3d 616 (2006) (plurality opinion) ("If the legislature does not register its disapproval of a court opinion, at some point that silence itself is evidence of legislative approval." (citing *State v. Coe*, 109 Wn.2d 832, 846, 750 P.2d 208 (1988))). Instead, *Chenoweth* has distorted and redefined the *Dunaway* test, overruling it sub silentio. "Where we have expressed a clear rule of law" as we did in *Dunaway* "we will not—and should not—overrule it sub silentio." *Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009).

*Dunaway* and postamendment cases did not examine the statutory intent between crimes in determining the criminal intent element under a same criminal conduct analysis. Under *Dunaway*, the standard for deciding if crimes encompass the same criminal conduct has always focused on the extent to which the criminal intent, as objectively viewed, changed from one crime to the next and not on the statutory definitions of intent for each crime. 109 Wn.2d at 215.

The Court of Appeals has consistently applied *Dunaway* and concluded that same criminal intent will yield the same criminal conduct if the intent, as objectively viewed,

No. 100570-9
Madsen, J., dissenting

remains the same between the crimes. *E.g.*, *State v. Longuskie*, 59 Wn. App. 838, 847, 801 P.2d 1004 (1990) (determining that kidnapping encompassed the same criminal conduct as child molestation committed during the kidnapping because "child molestation was the objective intent[, t]he kidnapping furthered that criminal objective and the crimes were committed at the same time and place"); *State v. Anderson*, 72 Wn. App. 453, 463-64, 864 P.2d 1001 (1994) (determining that escape and assault are the same criminal conduct where the assault was committed to effectuate the escape); *State v. Calvert*, 79 Wn. App. 569, 577-78, 903 P.2d 1003 (1995) (noting that two check forgeries occurring at the same bank on the same day constituted the same criminal conduct); *State v. Taylor*, 90 Wn. App. 312, 321-22, 950 P.2d 526 (1998) (kidnapping and assault that were committed simultaneously shared the same objective intent); *State v. Davis*, 90 Wn. App. 776, 781-82, 954 P.2d 325 (1998) (deciding that an assault and a burglary encompassed the same criminal conduct when the defendant pointed a gun at the victim who threatened to call the police); *State v. Saunders*, 120 Wn. App. 800, 825, 86 P.3d 232 (2004) (concluding that "the kidnapping was committed in furtherance of the rape and, thus, the kidnapping and rape were the same criminal conduct"); *State v. Bickle*, 153 Wn. App. 222, 230-34, 222 P.3d 113 (2009) (providing that manufacturing cannabis encompassed the same criminal conduct as possession of cannabis); *see also State v. Vike*, 125 Wn.2d 407, 412-13, 885 P.2d 824 (1994) (concluding that simple possession of two different drugs encompassed the same criminal conduct).

21

No. 100570-9
Madsen, J., dissenting

Similarly, same criminal intent will not constitute same criminal conduct if the intent, as objectively viewed, changed from one crime to the next. *E.g.*, *State v. Worl*, 58 Wn. App. 443, 449-51, 794 P.2d 31 (1990) (applying the *Dunaway* analysis and determining that the crime of malicious harassment and attempted murder of the same victim did not encompass the same criminal conduct because the harassment was completed when the defendant exited the car and thus did not further the attempted murder) *rev'd on other grounds by State v. Barnes*, 117 Wn.2d 701, 818 P.2d 1088 (1991); *Lewis*, 115 Wn.2d at 302 ("[Defendant's] acts were not part of a single criminal conduct because the commission of one drug deal did not further the commission of the other drug deals, and they were not part of a recognizable scheme or plan."); *State v. Becker*, 59 Wn. App. 848, 855-56, 801 P.2d 1015 (1990) (applying the *Dunaway* standard and finding that the crime of illegal possession of a firearm and manslaughter committed with that firearm did not encompass the same criminal conduct because the time and place of the two crimes were not the same); *State v. Stearns*, 61 Wn. App. 224, 232-34, 810 P.2d 41 (1991) (finding that under the *Dunaway* test, attempted rape and robbery of the same victim did not encompass the same criminal conduct because the robbery did not further the rape); *State v. Walker*, 143 Wn. App. 880, 890-92, 181 P.3d 31 (2008) (emphasizing that first degree theft *could further* the commission of first degree trafficking in stolen property but ultimately making its decision recognizing that the criminal intent between the two crimes, when viewed objectively under *Dunaway*, are different).

22

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

Contrary to *Chenoweth* and the majority's claims, Washington's case law demonstrates that examining the intent element of a criminal statute is *not* the crux of the criminal intent inquiry under RCW 9.94A.589. Indeed, *Chenoweth* is a clear departure from the *Dunaway* test.

First, unlike *Dunaway*, *Chenoweth* fails to reflect the legislature's intent. In 1987, the legislature specifically amended the statute to provide the following:

> "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

*See* LAWS OF 1987, ch. 456, § 5, at 1980.

As noted above, *Dunaway* established an objective intent analysis, whereby courts examine the extent to which the criminal intent, as objectively viewed, changed from one crime to the next. 109 Wn.2d at 215. Had *Chenoweth* applied that test, the court would have recognized that rape of a child and incest are two different crimes with different statutory elements. However, when viewed objectively, the defendant's criminal intent in *Chenoweth* did not change in the course of a single act. In contrast to the objective intent test, under *Chenoweth*'s statutory intent approach, the crimes will not be considered same criminal conduct because the statutory criminal intent is not the same.

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

6. *Tili* Properly Applied the *Dunaway* Standard and Did Not Discuss Statutory Criminal Intent as the Majority Claims

Continuing to reimagine the case law, the majority cites to *Tili* and claims that a connection in the statutory definition between crimes is imperative in determining whether crimes encompass the same criminal conduct. Majority at 12. The majority, however, fails to explain how the court in *Tili* reached its conclusion.

In *Tili*, the offenses at issue concerned three first degree rape charges that involved the same victim, happened at the same place, and occurred almost simultaneously in time within two minutes of each other. 139 Wn.2d at 110-11. The issue was whether the three acts of rape involved the same objective criminal intent. *Id.* at 119, 123. *Tili* held that the trial court abused its discretion when it failed to treat the defendant's three first degree rape convictions as one crime for sentencing purposes and remanded for resentencing. *Id.* at 124-25, 128.

The *Tili* court recognized that "[f]or multiple crimes to be treated as 'same criminal conduct' at sentencing, the crimes must have (1) been committed at the same time and place; (2) involved the same victim; and (3) involved the same objective criminal intent." *Id.* at 123 (citing *State v. Palmer*, 95 Wn. App. 187, 190, 975 P.2d 1038 (1999); *State v. Walden*, 69 Wn. App. 183, 187-88, 847 P.2d 956 (1993); former RCW 9.94A.400(1)(a) (1996)). "The absence of any one of these [three] prongs prevents a finding of same criminal conduct." *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997); *see also Vike*, 125 Wn.2d at 410.

24

No. 100570-9
Madsen, J., dissenting

Further, the *Tili* court noted that "[t]he relevant inquiry for the intent prong is to what extent did the criminal intent, *when viewed objectively*, change from one crime to the next." 139 Wn.2d at 123 (emphasis added); *see also Palmer*, 95 Wn. App. at 191 & n.5 (citing *State v. Williams*, 135 Wn.2d 365, 368, 957 P.2d 216 (1998)). The *Tili* court then analyzed *State v. Grantham*, 84 Wn. App. 854, 932 P.2d 657 (1997), and *Walden* to determine whether Tili's three rapes encompassed the same objective criminal intent.

In *Grantham*, the evidence demonstrated that the defendant's "criminal episode had ended with the first rape" (forced anal intercourse), and after that first rape, the defendant had the "'time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act.'" *Tili*, 139 Wn.2d at 123 (quoting *Grantham*, 84 Wn. App. at 859). Forming a new intent to commit the second rape, the *Grantham* defendant chose the latter when he threatened his victim, physically assaulted the victim, and forced the victim to perform oral sex. *Id.* at 123-24. *Tili* reasoned that "Grantham was able to form a new criminal intent before his second criminal act because his 'crimes were sequential, *not simultaneous* or *continuous*.'" *Id.* at 124 (quoting *Grantham*, 84 Wn. App. at 859) (emphasis added). Contrasting *Grantham*'s facts to the three rapes at issue in *Tili*, which were "continuous, uninterrupted, and committed within a much closer time frame—approximately two minutes," the court observed that "[t]his extremely *short time frame*, coupled with Tili's *unchanging pattern of conduct*, objectively viewed, renders it unlikely that Tili formed an independent criminal intent between each separate penetration." *Id.* (emphasis added).

25

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

The court in *Tili* then discussed *Walden*. In that case, a jury convicted the defendant of rape involving oral sex and attempted rape when the defendant, in quick succession, forced a minor victim to perform oral sex on the defendant and then attempted to anally penetrate the victim. *Id.* (citing *Walden*, 69 Wn. App. at 184-85). The court recognized that "[i]n determining whether the two acts involved the 'same criminal conduct' . . . , the *Walden* court held that, '[w]*hen viewed objectively, the criminal intent of the conduct comprising the two charges is the same: sexual intercourse*. Accordingly, the two crimes . . . furthered a single criminal purpose.'" *Id.* (emphasis added) (third alteration in original) (quoting *Walden*, 69 Wn. App. at 188).

Analogizing *Walden* to *Tili*, the court held that "[Tili's] *unchanging pattern of conduct*, coupled with an *extremely close time frame*, strongly supports the conclusion that his criminal intent, *objectively viewed*, did not change from one penetration to the next." *Id.* (emphasis added). Accordingly, *Tili*'s analysis, in my view, followed the criteria set forth in *Dunaway* and did not discuss the statutory criminal intent as the majority suggests.

The majority similarly suggests that the analysis in *State v. Garza-Villarreal*, 123 Wn.2d 42, 49, 864 P.2d 1378 (1993), is similar to the analysis in *Tili* because *Garza-Villarreal* looked at the statutory intent of the crimes charged in determining whether crimes encompass the same criminal conduct. Majority at 12-13. Again, I must depart from the majority's reasoning that *Garza-Villarreal* supports this statutory intent test.

26

No. 100570-9
Madsen, J., dissenting

*Garza-Villarreal* involved two separate cases with two separate defendants. In the first case against Francisco Garza-Villarreal, the defendant pleaded guilty to two counts of attempted unlawful possession of a controlled substance with intent to deliver (i.e., heroin and cocaine). 123 Wn.2d at 44. At sentencing, Garza-Villarreal argued that his offender score should not include the concurrent offense of attempted unlawful possession of a controlled substance with intent to deliver. *Id.* The trial court reasoned that Garza-Villarreal's convictions, based on different controlled substances involved in the same transaction, did not encompass the same criminal conduct and sentenced him to concurrent terms of 65 months of confinement. *Id.* at 45. In an unpublished decision, the Court of Appeals vacated Garza-Villarreal's sentence and reasoned,

> "When two counts of possession with intent to deliver are simultaneously committed, they constitute different criminal conduct if the facts usable at sentencing, when objectively viewed, give rise to a reasonable inference that the defendant intended to deliver one or more controlled substances in two different transactions. Otherwise, the two acts constitute the same criminal conduct. There is no evidence in this case, except the existence of two different drugs, that would indicate more than one transaction was intended."

*Id.* (quoting *State v. Garza-Villarreal*, noted at 63 Wn. App. 1046, slip op. at 2 (1992)).

In the second case, a jury convicted Joseph Casarez of two counts of unlawful delivery of a controlled substance and one count of unlawful possession of a controlled substance. *Id.* At sentencing, Casarez contended that his offender score, like Garza-Villarreal, should not include the two convictions for unlawful delivery of a controlled substance because they encompass the same criminal conduct. *Id.* at 45-46. The trial court reasoned that Casarez's two unlawful delivery offenses are separate crimes for

27

No. 100570-9
Madsen, J., dissenting

purposes of sentencing and sentenced Casarez to concurrent terms of 120 months of confinement on the two delivery counts and 22 months of confinement on the possession count. *Id.* at 46. The Court of Appeals reversed and held that the trial court erred when it failed to consider Casarez's two deliveries as the same criminal conduct. *Id.*; *see also State v. Casarez*, 64 Wn. App. 910, 915, 826 P.2d 1102 (1992), *aff'd, Garza-Villarreal*, 123 Wn.2d 42.

Reasoning that "[i]n both cases, the crimes, objectively viewed, furthered one overall criminal purpose," this court affirmed both cases and found that Garza-Villarreal's two convictions for possession with intent to deliver and Casarez's two convictions for delivery of a controlled substance encompassed the same criminal conduct. *Garza-Villarreal*, 123 Wn.2d at 48-49. Important to its conclusion, the *Garza-Villarreal* court recognized that "[t]his court has applied *Dunaway*'s *objective criminal intent test* in two cases involving controlled substances, *State v. Lewis*, 115 Wn.2d 294, 797 P.2d 1141 (1990), and *State v. Burns*, 114 Wn.2d 314, 788 P.2d 531 (1990)." *Id.* at 47 (emphasis added).

As discussed above, "[i]mplicit in the analysis of *Lewis* is that these crimes, committed at separate times, were separately realized and thus did not further each other." *Id.* at 48; *see also Lessley*, 118 Wn.2d at 778.

In *Burns*, the defendant was charged with delivery of cocaine when he sold cocaine to an undercover police officer and with possession with intent to deliver when additional cocaine was found in the defendant's van. 114 Wn.2d at 315-16. At

28

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

sentencing, the defendant contended that the two crimes encompassed the same criminal conduct because his criminal objective was the same: to sell cocaine. *Id.* at 317. He further argued that the two crimes are the same criminal conduct because the possession of cocaine furthered the delivery (i.e., possession of cocaine is necessary to sell it). *Id.* The trial court disagreed and sentenced Burns to a range of 21 to 27 months of confinement. *Id.* at 316. The Court of Appeals affirmed the trial court and reasoned,

> "In the case at bar, viewing the facts objectively, the criminal intent for each count was not the same, as claimed by Burns. The 'same course of conduct' exception was meant to apply to situations where there is only one criminal purpose or motive. Here, as in *State v. Boze*, 47 Wn. App. 477, 735 P.2d 696 (1987), the criminal objective of each crime was realized independently of the other. *When Burns delivered he committed one crime, but he still had in his possession a significant amount of cocaine* which he intended to sell to others. *The delivery did not further his intent to sell the remaining cocaine.* Had Burns possessed only the cocaine delivered there is no question but that the objective would be the same, as one must be in possession in order to deliver. Where, as in this case, the evidence shows possession of a quantity greater than that delivered, that same evidence indicates an independent objective to make other deliveries. Under these circumstances, despite their contemporaneity, the crimes did not encompass the same criminal conduct."

*Id.* at 319 (quoting *State v. Burns*, 53 Wn. App. 849, 853, 770 P.2d 1054 (1989) (emphasis added)).

This court affirmed the Court of Appeals and determined that the crime of delivery and the crime of possession with intent to deliver are separate crimes because both involve different criminal intents. The crime of delivery involves an intent to deliver at the present and the crime of possession with intent to deliver involves an intent to deliver in the future. *See generally Burns*, 114 Wn.2d at 318-20.

29

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Applying both *Lewis* and *Burns*, the court in *Garza-Villarreal* concluded that the two crimes of attempted unlawful possession of a controlled substance with intent to deliver arose from the same criminal conduct. 123 Wn.2d at 48. The court explained,

> The fact that the two charges involved different drugs does not by itself evidence any difference in intent. The possession of each drug furthered the overall criminal objective of delivering controlled substances in the future. Thus, Garza-Villarreal's convictions were for crimes committed in furtherance of the same objective criminal intent and, under the *Dunaway* test, are to be considered a result of the same criminal conduct.

*Id.* at 49.

Similarly, the court concluded that Casarez's two convictions of unlawful delivery of a controlled substance derived from the same criminal conduct. *Id.* The court reasoned that

> Casarez's convictions for delivery of cocaine and delivery of heroin evidenced a single criminal objective of completing a drug deal. Absent other evidence, the fact that two different drugs were involved in no way indicated different objectives. Delivery of each drug furthered Casarez's single criminal objective of selling drugs in the present. Because the same objective intent underlay both crimes, application of *Dunaway* leads us to conclude that Casarez's crimes should be considered the same criminal conduct for purposes of calculating his offender score.

*Id.*

Contrary to the majority's suggestion, the *Garza-Villarreal* court focused on whether the defendants' crimes furthered the other and not on the statutory language of the crimes.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 100570-9
Madsen, J., dissenting

Conclusion

In sum, I would hold that the trial court erred when it applied *Chenoweth* in deciding that Westwood's convictions did not constitute the same criminal conduct for sentencing purposes. The standard articulated in *Dunaway* is most consistent with the seminal cases interpreting the same criminal intent prong under the same criminal conduct analysis. *Dunaway*'s application has long been recognized when deciding same criminal conduct. I would affirm the Court of Appeals. With these considerations in mind, I respectfully dissent.

_____
Madsen, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Whitener, J.

31